ACS OF ALASKA, INC., ACS of The Northland, Inc., and ACS of Fairbanks, Inc., Appellants,

v.

REGULATORY COMMISSION OF ALAS-KA, and GCI Communication Corp., d/b/a General Communication, Inc., Appellees.

No. S–10466.

Supreme Court of Alaska.

Dec. 12, 2003.

☞267

S. Lynn Erwin, Alaska Communications Systems, Anchorage, and Elizabeth H. Ross, Birch, Horton, Bittner & Cherot, Washington, D.C., for Appellants.

Ron Zobel, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee Regulatory Commission of Alaska.

Martin M. Weinstein, General Communication, Inc., Anchorage, for Appellee GCI.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

### *OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

This case arises under the local telephone competition provisions of the federal Telecommunications Act of 1996. GCI petitioned the Regulatory Commission of Alaska (RCA) to terminate the rural exemptions of three Alaska Communication Systems (ACS) subsidiaries so that GCI could compete with these companies in rural Alaska. The RCA terminated ACS's rural exemptions, and ACS appeals that decision. Because the RCA erred in allocating the burden of proof to ACS, we reverse and remand for additional proceedings before the RCA with GCI shouldering the burden of proof. Additionally, because the RCA erred in terminating ACS's rural exemption for its Glacier State Study Area, we reverse that decision.

## II. FACTS AND PROCEEDINGS

### A. The Telecommunications Act of 1996

The federal Telecommunications Act significantly changed the delivery of telephone service in this country.[1] At the heart of the Act, and at issue in this case, are the provisions designed to promote local telephone competition.[2] These provisions eliminate state-imposed barriers to competition and force incumbent local exchange carriers to cooperate with their potential competitors.[3] These competitors are referred to as competitive local exchange carriers.[4] The Act facili-

---

1. *See, e.g.,* STUART MINOR BENJAMIN ET AL., TELECOMMUNICATIONS LAW AND POLICY 717 (2001); Salvatore Massa et al., *Pricing Network Elements Under the Telecommunications Act of 1996: Back to the Future,* 23 HASTINGS COMM. & ENT. L.J. 751, 752 (2001) (noting Act is "revolutionary piece of legislation"); Aimee M. Adler, Notes and Comment, *Competition in Telephony: Perception or Reality? Current Barriers to the Telecommunications Act of 1996,* 7 J.L. & Pol'y 571, 571 (1999).

2. BENJAMIN ET AL., *supra* TELECOMMUNICATIONS LAW AND POLICY, at 716.

3. *Id.*

4. *Id.* at 1047.

tates competition in a number of ways.[5] First, the Act requires incumbents to allow competitors to interconnect with the incumbent's existing local network.[6] This provision, referred to as interconnection, allows new entrants to use the incumbent's existing network to provide competing local telephone service.[7] Second, the unbundled access provision of the Act requires incumbents to provide competitors with access to elements of the incumbent's network on an unbundled basis.[8] The unbundling provision permits new entrants "that have not completely built out their own networks to offer services over a combination of their own facilities and those leased from incumbents." [9] Third, the Act requires incumbents to sell to competitors, at wholesale prices, any telecommunications services it sells to its customers at retail rates.[10] This provision, referred to as the resale provision, allows competitors to resell to customers at retail prices the telecommunications services they purchase from the incumbent at wholesale.[11] These competitive provisions are found in section 251(c) of the Telecommunications Act.

Despite the Act's general theme favoring competition,[12] Congress, in the interest of promoting universal service, exempted rural telephone companies from the duty to compete. Congress defined "rural telephone company" as

a local exchange carrier operating entity to the extent that such entity—

(A) provides common carrier service to any local exchange carrier study area that does not include either—

(i) any incorporated place of 10,000 inhabitants or more, or any part thereof, based on the most recently available population statistics of the Bureau of the Census; or

(ii) any territory, incorporated or unincorporated, included in an urbanized area, as defined by the Bureau of the Census as of August 10, 1993;

(B) provides telephone exchange service, including exchange access, to fewer than 50,000 access lines;

(C) provides telephone exchange service to any local exchange carrier study area with fewer than 100,000 access lines; or

(D) has less than 15 percent of its access lines in communities of more than 50,000 on February 8, 1996.[13]

Because these rural telephone companies are free from the competitive obligations imposed by the Act, these ILECs remain monopolist providers of local telephone service in their areas. The rural exemption is contained in section 251(f)(1) of the Act and provides, in pertinent part:

Subsection (c) of this section shall not apply to a rural telephone company until (i) such company has received a bona fide request for interconnection, services, or network elements, and (ii) the State commission determines (under subparagraph (B)) that such request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title (other than subsections (b)(7) and (c)(1)(D) thereof).[14]

Until a state commission makes the requisite findings under these three elements, rural telephone companies are exempt from competition.[15]

## B.   The Rural Exemption Proceedings

In April 1997 GCI requested interconnection with three rural telephone companies. These companies were PTI Communications of Alaska, Inc., Telephone Utilities of Alaska,

5.   47 U.S.C. § 251(c) (2001); Michael Glover & Donna Epps, *Is the Telecommunications Act of 1996 Working?*, 52 ADMIN. L.REV. 1013, 1014 (2000).

6.   47 U.S.C. § 251(c)(2) (2001).

7.   *Id.*

8.   47 U.S.C. § 251(c)(3) (2001).

9.   Glover and Epps, *supra* at 1014.

10.   47 U.S.C. § 251(c)(4) (2001).

11.   *Id.*

12.   BENJAMIN ET AL., *supra* n. 1.

13.   47 U.S.C. § 153(37) (2001).

14.   47 U.S.C. § 251(f)(1)(A) (2001).

15.   *Id.*

Inc., and Telephone Utilities of the Northland, Inc. These companies are now subsidiaries of ACS and we refer to them collectively as ACS.

The Alaska Public Utilities Commission (APUC)[16] held public hearings in December 1997 to determine whether to terminate ACS's rural exemptions. In an order issued January 8, 1998, APUC continued ACS's rural exemptions reasoning that (1) the evidence in the record did not support an affirmative finding that the utility would not suffer an undue economic burden if the exemptions were terminated and (2) support mechanisms had not yet been reformed to accommodate competition in local service.

GCI appealed APUC's decision to the superior court. Finding that APUC had erroneously placed the burden of proof on GCI, the superior court remanded the case to APUC for another hearing. APUC held a second hearing in June of 1999. On June 30, 1999, APUC granted GCI's petition to terminate ACS's rural exemptions. APUC reasoned that adequate mechanisms were in place to preserve and further universal service such that terminating ACS's exemptions would not frustrate these goals.

ACS petitioned APUC's successor, the RCA, for review of the decision to terminate ACS's rural exemptions. ACS asserted that APUC's revocation of the exemptions "exposed high cost rural consumers to the detriments of competition without establishing the basis for offsetting competitive benefits." Because the RCA found that APUC's decision lacked an adequate analysis of the disputed legal, factual, and policy issues, it granted ACS's motion for reconsideration. However, after reviewing the record, the RCA affirmed APUC's termination of the utility's rural exemptions. ACS appealed to the superior court, Judge John E. Reese presiding. The superior court affirmed the RCA, and ACS appeals the RCA's decision to this court.

## III. STANDARD OF REVIEW

■■ We do not defer to a superior court decision when that court acts as an intermediate court of appeal.[17] We apply the substitution of judgment standard when reviewing legal questions that do not require agency expertise "or where the agency's specialized knowledge and experience would not be particularly probative as to the meaning of the statute."[18]

## IV. DISCUSSION

### A. Progression of Federal and State Litigation Over 47 U.S.C. § 251(f)(1) Rural Exemption Proceedings

The central issue on appeal is whether the RCA erred in allocating the burden of proof to ACS in the rural exemption proceeding. Because telecommunications regulation is primarily federal, it is important to view the history of the present controversy in the context of significant federal litigation that was proceeding simultaneously.

### 1. *Iowa I*

Shortly before GCI sought to compete with ACS, the Federal Communications Commission (FCC) promulgated a rule allocating the burden of proof in rural exemption proceedings to the incumbent local exchange carrier.[19] The regulation provided: "Upon receipt of a bona fide request for interconnection, services, or access to unbundled network elements, a rural telephone company must prove to the state commission that the rural telephone company should be entitled

---

**16.** APUC is the forerunner to the RCA. On July 1, 1999, APUC ceased to exist and the RCA assumed its duties. Ch. 25, SLA 1999.

**17.** *Tlingit–Haida Reg'l Elec. Auth. v. State*, 15 P.3d 754, 761 (Alaska 2001); *United Utils., Inc. v. Alaska Pub. Utils. Comm'n*, 935 P.2d 811, 814 (Alaska 1997).

**18.** *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987); *see also id.* ("'[This] standard is appropriate where the

knowledge and experience of the agency is of little guidance to the court *or* where the case concerns statutory interpretation or other analysis of legal relationships about which the courts have specialized knowledge and experience.'") (quoting *Earth Res. Co. of Alaska v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983) (internal quotations omitted)).

**19.** 47 C.F.R. § 51.405(a) (2002).

... to continued exemption" from the Telecommunications Act's interconnection requirements.[20]

Three months before APUC held the initial hearing in this case, the United States Court of Appeals for the Eighth Circuit vacated this rule in *Iowa Utilities Board v. Federal Communications Commission (Iowa I )*, reasoning that the FCC exceeded its jurisdiction in promulgating the regulation.[21] The court noted: "The plain meaning of subsection[ ] 251(f)(1) (governing exemptions) ... indicates that the state commissions have the exclusive authority to make these determinations, and nothing in [this provision], or in the Act generally, provides the FCC with the power to prescribe the governing standards for such determinations." [22] The Eighth Circuit also looked to the legislative history of the Telecommunications Act to support its conclusion that the FCC exceeded its authority in promulgating 47 C.F.R. § 51.405(a):

> Congress rejected both a Senate bill and a House bill that gave the FCC concurrent jurisdiction with state commissions to administer the exemption and waiver provisions. It would be unreasonable to infer from subsection 251(d) or the other general rulemaking provisions cited by the FCC that Congress intended to put the Commission—the agency it decided to exclude from the exemption process—in a position to dictate the substantive standards governing the exemption process.[23]

The clear guidance that the FCC had provided through its regulation 47 C.F.R. § 51.405(a) therefore no longer existed when APUC first addressed this case.

In the first hearing, APUC assigned the burden of proof to GCI. APUC denied GCI's petition to terminate ACS's rural exemptions on January 8, 1998, and GCI appealed APUC's decision to the superior court.

## 2. United States Supreme Court's review of *Iowa I* and state superior court's response

Prior to the superior court decision, the United States Supreme Court reversed the Eighth Circuit's *Iowa I* ruling, concluding that the FCC had "jurisdiction to promulgate rules ... regarding rural exemptions...." [24] The Court remanded the case to the Eighth Circuit to consider the substantive challenges to the regulation.[25] The superior court had the benefit of the Supreme Court's decision in deciding GCI's appeal from APUC. The superior court concluded that APUC erred in allocating the burden of proof to GCI and remanded for another agency hearing, noting that "fairness concerns prescribe the conclusion that the party in control of the evidence, in this case [ACS], bears the burden of proving that evidence."

After the superior court remanded the case to APUC, APUC held a second hearing in June 1999, with ACS shouldering the burden of proof. APUC issued its decision terminating the rural exemptions on June 30, 1999. In its brief order, APUC determined that ACS would not face an undue economic burden, were it required to interconnect with GCI. Additionally, APUC noted that GCI's request for interconnection was technically feasible. Thus, APUC turned to consider whether interconnection would be consistent with the goals of universal service. APUC concluded that federal and state universal service funds would adequately preserve and advance universal service. APUC emphasized the importance of competition in its order:

> Without removal of [ACS's] rural exemption, it is questionable whether the rural portions of Alaska that are the subject of GCI's petition will ever have competitive local exchange service. Therefore, the Commission has determined that it is ap-

**20.** *Id.*

**21.** 120 F.3d 753, 802 (8th Cir.1997), *aff'd in part, rev'd in part,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

**22.** *Id.*

**23.** *Id.* (citing S.REP. No. 104–23, 1995 WL 142161 at *206–07 (§ 251(i)(3)) (1995); H.R. 1555, 104th Cong. § 242(e) (1995)).

**24.** *AT & T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 385, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

**25.** *Id.* at 385, 397, 119 S.Ct. 721.

propriate to remove that roadblock and proceed down the path to competition.

The RCA reconsidered APUC's decision and affirmed on October 11, 1999. ACS appealed to the superior court.

### 3. Eighth Circuit's decision on remand—*Iowa II*

In the midst of ACS's administrative appeal to the superior court, the Eighth Circuit decided *Iowa Utilities Board v. Federal Communications Commission* [26] (*Iowa II*). This time, the federal court vacated on substantive grounds the FCC's rule that, under the Telecommunications Act, a rural incumbent telephone company must bear the burden of proof in demonstrating to a state commission that it is entitled to a continued exemption from competition.[27] The court reasoned that "[t]he plain meaning of the statute requires the party making the request to prove that the request meets the three prerequisites to justify the termination of the otherwise continuing rural exemption." [28]

In reviewing ACS's administrative appeal, Judge Reese acknowledged the Eighth Circuit's authority but concluded that any error in the burden of proof allocation was harmless, even in light of *Iowa II*. Judge Reese noted: "This [c]ourt recognizes the authority of the Eighth Circuit in this matter, but does not find the *Iowa Utilities Bd. II* decision decisive on the outcome of the current appeal." Judge Reese emphasized that the RCA based its decision on the evidence presented at the hearings and not on a consideration of the burden of proof. Judge Reese concluded:

"This [c]ourt must determine the applicability of *Iowa Utilities Bd. II* to the current appeal. The APUC used a record

created in two separate hearings in its decision to terminate ACS['s] rural exemption. Both ACS and GCI were responsible for bearing the burden of proof at one of the hearings. Both ACS and GCI presented evidence and created a record accordingly. The RCA found that the record from both hearings justified termination of the rural exemption. The RCA's [decision to terminate ACS's rural exemptions] clearly shows that the Commission made its findings based on the weight of the evidence and not because of an unmet burden of proof[.]"

Implicit in Judge Reese's statement is an apparent determination that any error in the allocation of proof to ACS in light of *Iowa II* was harmless. Accordingly, the superior court affirmed the RCA's termination of ACS's rural exemptions.

### B. The RCA Erred in Placing the Burden of Proof on ACS, the Incumbent Local Exchange Carrier.

On appeal, ACS argues that the RCA erred in placing the burden of proof on ACS because this is contrary to federal law as announced in the Eighth Circuit's *Iowa II* decision. In *Iowa II*, the Eighth Circuit concluded that the plain meaning of 47 U.S.C. § 251(f)(1)(A) and (B) "requires the party making the request to prove that the request meets the three prerequisites to justify the termination of the otherwise continuing rural exemption." [29] Given the Eighth Circuit's holding, ACS asserts that "federal law squarely places the burden of proof on GCI rather than [ACS]."

■ GCI responds to ACS's contentions with a number of policy reasons for placing the burden of proof on ACS; two of these reasons have some strength.[30] First, GCI

**26.** 219 F.3d 744 (8th Cir.2000), *reversed in part on other grounds by Verizon Communications, Inc. v. Fed'l Communications Comm'n*, 535 U.S. 467, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002).

**27.** *Id.* at 762.

**28.** *Id.*

**29.** *Id.*

**30.** In addition to the policy reasons put forward by GCI, the RCA argues that after the first appeal

from APUC to the superior court, the superior court's allocation of the burden of proof to ACS became the law of the case. "The doctrine of law of the case requires a lower court to follow an appellate court's prior decision and prohibits reconsideration of issues which have been adjudicated in an appeal of the case." *Bauman v. Day*, 942 P.2d 1130, 1132 n. 1 (Alaska 1997). To the extent that APUC was bound by the superior court's decision on remand, the superior court's allocation of the burden of proof to ACS was the law of the case. We, however, are not bound by

notes that ACS, as the incumbent local exchange carrier, controls relevant information on issues including: its financial health and status, its ability to withstand the expected competitive pressures exerted by competition, its ability to withstand the costs of providing the services requested by the competitor, and its network design and ability to facilitate the competitor's requests. GCI asserts that because ACS has superior access to this information, ACS should bear the burden of proof because it is "in the best position to produce the relevant information and to explain how competitive pressures could harm the incumbent or service to rural customers." Second, GCI argues that placing the burden of proof on ACS is consistent with the Telecommunications Act's statutory scheme for rural exemption proceedings. This is true, according to GCI, because under 47 U.S.C. § 251(c), after a competitor files notice with the state commission that it seeks to compete with an incumbent, the state commission has 120 days to gather the necessary information to determine whether to terminate the incumbent's rural exemption.[31] GCI argues that this short time frame "does not permit rounds of discovery, delay and associated costs frequently tolerated in the traditional model of civil litigation." GCI concludes that the limited time frame and ACS's superior access to information relevant to the continuation of its rural exemption weigh in favor of ACS's shouldering the burden of proof.

While we see the logic in GCI's arguments, policy arguments cannot control the outcome in this case. A number of developments suggest to us that we should be guided by the Eighth Circuit's decision in *Iowa II*.

■ The United States Supreme Court has held that the FCC, a federal agency, has jurisdiction to promulgate regulations under the Telecommunications Act to guide state commissions.[32] After the FCC promulgated regulations under the Telecommunications Act, in its *First Report and Order*,[33] numerous parties challenged those regulations.[34] Under the Hobbs Act, the federal circuit courts of appeal have exclusive jurisdiction over those challenges. The Hobbs Act provides:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

> (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47.[35]

The parties challenging the FCC regulations brought suits in various federal appellate courts.[36] When agency regulations are challenged in multiple circuits, the panel on multidistrict litigation, acting under 28 U.S.C. § 2112, consolidates the petitions and assigns them to a single court of appeal.[37] The panel assigned the challenges concerning the FCC's Telecommunications Act regulations to the Eighth Circuit.[38] Thus, the Eighth Circuit became the only forum to consider the challenges to the FCC regulations following the FCC's *First Decision and Order*.[39]

In addition to the FCC's jurisdiction to promulgate regulations under the Telecommunications Act and the federal appellate courts' (in this case, Eighth Circuit's) exclu-

the superior court's allocation of the burden of proof, as this issue has not been brought to this court before. *See, e.g., Denuptiis v. Unocal Corp.,* 63 P.3d 272, 277 (Alaska 2003).

**31.** 47 U.S.C. § 251(f)(1)(A), (B) (2001).

**32.** *AT & T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 385, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

**33.** *See GTE South, Inc. v. Morrison,* 199 F.3d 733, 737 (4th Cir.1999) (citing *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, First Report and Order,* 11 F.C.C.R. 15499, 1996 WL 452885 (1996)).

**34.** *MCI Telecommunications Corp. v. U.S. West Communications,* 204 F.3d 1262, 1267 (9th Cir. 2000).

**35.** 28 U.S.C. § 2342 (1994).

**36.** *MCI,* 204 F.3d at 1267.

**37.** *Id.*

**38.** *Id.*

**39.** *GTE South, Inc. v. Morrison,* 199 F.3d 733, 743 (4th Cir.1999).

sive jurisdiction to hear challenges to those regulations, the United States Supreme Court has recognized the need for a national standard for telecommunications regulation under the 1996 Act, noting that the federal government has unquestionably "taken local telecommunications competition regulation away from the States [ ][w]ith regard to the matters addressed by the 1996 Act," and that "a federal program administered by 50 independent state agencies [would be] strange." [40] All of these factors suggest that we should look to the only available federal guidance in deciding which party shoulders the burden of proof in a rural exemption proceeding: the Eighth Circuit's decision in *Iowa II*. The Eighth Circuit is the only federal court to speak to the issue of the burden of proof allocation in rural exemption proceedings under 47 U.S.C. § 251(f)(1). We adopt the Eighth Circuit's holding that the competitor must bear the burden of proof. Therefore, we now turn to the question whether the RCA's error in placing the burden of proof on ACS was harmless.

### 1. Harmless error analysis

■ As discussed above, the superior court implicitly found that any error in the RCA's allocation of the burden of proof to ACS was harmless, noting: "The RCA's conclusion [to terminate ACS's rural exemptions] clearly shows that the Commission made its findings based on the weight of the evidence and not because of an unmet burden of proof[.]" Despite the superior court's assertion, an examination of the RCA's analysis reveals that the RCA did indeed base a number of its conclusions either on ACS's failure to satisfy the burden of proof or on a general lack of proof. For example, when discussing the economic burden element of section 251(f)(1)(a), the RCA explicitly based its finding in favor of GCI on the fact that "[t]he Commission finds that [ACS] did not meet [its] burden of proving undue economic

burden." Similarly, with regard to one aspect of universal service, the RCA based its decision in favor of GCI on the fact that "[t]here was no showing by [ACS] that customers would have any less access to advanced services than they do now if the rural exemption [were] terminated." The RCA's repeated dependence upon the burden of proof allocation in reaching its decision suggests that this error affected ACS's substantial rights.[41] Because we cannot conclude that the RCA's error was harmless, we remand this case for the RCA to analyze the rural exemption issue with GCI shouldering the burden of proof on the three elements of 47 U.S.C. § 251(f)(1)(A): undue economic burden, technical feasibility, and universal service.

### 2. Proceedings on remand

On remand, the RCA may elect to hold a supplemental evidentiary hearing on one or more of the issues, as it sees fit. The RCA is free to consider the current state of the evidence and is not bound by the record before it in 1999 when it issued its last order in these proceedings. As noted above, GCI has expressed concern about its ability to amass the relevant information to shoulder its burden of proof. Specifically, it noted ACS's superior access to information and the short 120–day time frame for the RCA to gather information before making its decision. These concerns can be relieved by the RCA's control and management of the discovery process in the remand proceedings. Generally, "the conduct and extent of discovery is left to the sound discretion of the agency. . . ." [42] The RCA may order discovery and require ACS's active participation in assisting GCI to analyze and organize the information, including ordering ACS to produce summaries of information and provide analyses to accompany documents it produces.[43]

**40.** *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

**41.** Alaska R. Civ. P. 61; *see, e.g., Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 722 (Alaska 1975) (noting appellant must show substantial prejudice to demonstrate error not harmless).

**42.** CHARLES H. KOCH, ADMINISTRATIVE LAW AND PRACTICE § 5.40 (2d ed.1997).

**43.** The legislature has accorded to the RCA authority to "issue subpoenas, subpoenas duces tecum, and other process to compel the attendance of witnesses and the production of testimony, records, papers, accounts, and documents in a[ ]

Moreover, because we are remanding this case to the RCA, there will be a period of time between this decision and the RCA's determination on remand. Thus, we must consider how the parties should proceed during that interim period. ACS asks us to roll the clock back and reinstate APUC's original 1998 order in this case, in which APUC denied GCI's request to terminate ACS's rural exemption. GCI responds that reinstating the 1998 order would not be in the public interest, asserting that if the 1998 order were reinstated, service to its customers in the areas covered by the order would be disrupted. GCI also points out that "[s]uch harm and confusion to the public might be entirely unnecessary if the RCA were to subsequently terminate the rural exemption again on remand." We decline to reinstate APUC's original order and instead leave it to the RCA's discretion whether to continue the status quo and allow ACS and GCI to provide service to these areas simultaneously.

## C. The RCA Erred in Terminating ACS's Glacier State Study Area Exemptions.

██ Initially, GCI sought to compete with ACS throughout the Glacier State Study Area. A "study area" is the designated geographic area that a carrier serves.[44] The Glacier State Study Area encompasses areas near Fairbanks, on Kodiak Island, and cities on the Kenai Peninsula. GCI formally withdrew its request to compete with ACS throughout the entire Glacier State Study Area, however. Thereafter, GCI maintained that its request was limited to only one exchange in the Glacier State Study Area. As Gene Strid, GCI witness and Vice President and General Manager of Local Services at GCI, explained at the first hearing: "GCI at the present time seeks an interconnection for the termination and transport of local traffic, only at [ACS's] North Pole exchange." On remand, in May of 1999, Strid gave identical testimony. He testified explicitly that GCI had not requested interconnection at any oth-

er location in the Glacier State Study Area. "At the present time no interconnection other than at the North Pole wire center is contemplated." At the June 1999 remand hearing before APUC, Strid testified on cross-examination that GCI was only seeking collocation at the North Pole exchange office. The RCA appeared to understand the limited nature of GCI's request, recognizing that "GCI's request as modified during the hearing process is for interconnection at one location and resale throughout the balance of [ACS's] service area."

Ultimately, however, the RCA terminated ACS's exemptions for the entire Glacier State Study Area. ACS appealed this decision, arguing primarily that by terminating ACS's exemption for the entire study area, despite GCI's limited request, the RCA acted contrary to the plain language of section 251(f)(1)(A) of the Telecommunications Act. The superior court affirmed the RCA's decision without discussing the scope of the Glacier State termination. ACS then filed a motion for clarification with the RCA, requesting that the RCA specify whether the scope of the termination was limited to the parameters of GCI's request. The RCA denied this motion.

ACS argues that the RCA erred by terminating its rural exemption for the entire Glacier State Study Area when GCI made only a limited request. The RCA responds that a "partial" or "divisible" exemption cannot be granted under section 251(f) and that, once a bona fide request—even a narrow, localized request—is made, and once evidence supporting that request is presented, the Act requires the RCA to terminate the areawide exemption completely. But we find this response unpersuasive. The RCA cites no authority to support its reading of section 251(f). Moreover, nothing in section 251(f)'s language precludes localized termination or requires areawide termination when, as here, a request is specifically limited to one exchange among many included in an exempted study area. Indeed, the RCA's proposed

---

... hearing.... The commission may petition a court of this state to enforce its subpoenas, subpoenas duces tecum, or other process." AS 42.05.151(c).

**44.** 47 U.S.C. § 214(e)(5) (2001). ACS–N has two study areas, the Glacier State Study Area and the Sitka Study Area.

reading of section 251(f) would invite anomalous consequences, for it would open broad areas to competition based on artificially constricted evidence and findings concerning the economic and technical hardships that a competitor's presence might create in an isolated segment of the exempted area. We thus agree with ACS's argument and hold that, even if the burden of proof had been properly allocated, the RCA would have erred in terminating the Glacier State Study Area exemption, except as it applied to the North Pole exchange.

## V. CONCLUSION

Because the RCA erred in allocating the burden of proof to ACS, we REVERSE and REMAND the RCA's decision. Additionally, we REVERSE the RCA's decision with regard to the Glacier State Study Area.

CARPENETI, Justice, not participating.