Craig Wm. BLACK, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Board of Equalization,
Appellee.

No. S–12639.

Supreme Court of Alaska.

July 18, 2008.

Craig Wm. Black, pro se, Eagle River, Appellant.

Joshua M. Freeman, Assistant Municipal Attorney, and James N. Reeves, Municipal Attorney, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

An owner of a condominium unit in a community consisting of single-family homes on large parcels of land appealed the Municipality of Anchorage's assessment of property taxes. The owner claims that the Municipality erred by assessing taxes against the land under and around his stand-alone condominium unit and by inaccurately assessing the home's value. The owner's appeal to the Board of Equalization was unsuccessful, and the superior court affirmed the Board and awarded the Municipality attorney's fees. The owner appeals the Board's decision and the superior court's award of attorney's fees. Because we conclude that the land is a limited common element associated with the condominium and is thus taxable to the unit's owner, we affirm the Board's ruling.

## II. FACTS AND PROCEEDINGS

Craig Black purchased a condominium unit in Eagle River in 2001.[1] He paid $435,000 for the condominium unit, a self-contained four-bedroom single-family residence unconnected to any other structures in the common interest community,[2] and located on almost an acre of land;[3] the unit had been built in 1998. Black's condominium unit is part of Whitestone Estates, a common interest community that sits on 20.3 acres. Ten of the fourteen potential condominium unit sites have been developed, each with its own self-contained, single-family residence on a large parcel of land specifically associated with the residence. Whitestone Estates is governed by a declaration and three plans, on record at the district recorder's office. The Municipality of Anchorage assessed property taxes against Black in 2001, 2002, and 2003 based on the value of his condominium unit but did not separately assess taxes on the land associated with his condominium unit. In 2004 the Municipality assessed Black's condominium unit at $355,100 and the land at $58,200, for a total assessed value of $413,000. Black appealed and the Board of Equalization ruled two-to-one to assign no value to the land, but to increase the value of the condominium unit to $435,000.

In 2005 the Municipality again assessed property taxes based on the value of Black's land and condominium unit. The land was valued at $58,200 and the condominium unit at $400,400. Black again appealed to the Board. He presented two arguments in his appeal: first, that the land should not have been assessed to his condominium unit and second, that his condominium unit had been overvalued. He proposed a revised total property tax assessment of $294,000.

In his appeal, Black maintained that Whitestone Estates' declaration defined his condominium unit as simply his self-contained residence, not the 39,865 square feet (nearly one acre) of land on which the condominium unit was located. He disputed the Municipality's characterization of Whitestone Estates as a planned community and contended that the land for which he was being assessed was part of the "Whitestone Remainder," which was already being taxed by the Municipality. Black further argued that the Municipality was bound by the Board's 2004 decision on his appeal and that its failure to follow its own precedent violated his due process rights. Finally, Black argued that the Municipality had overvalued his condominium unit based on the comparable homes selected by the Municipality.

In a hearing before the Board on May 5, 2005, the Municipality defended its valuations

---

1. Black purchased the condominium with his wife, Camille Brill. For ease of reference, we refer to Black as the owner of the condominium.

2. The house has 2,803 square feet of finished living area, an attached garage of 706 square feet, a 226–square–foot wood deck, and a 2,036–square–foot unfinished basement.

3. The property on which Black's condominium is sited is 39,865 square feet.

of the land and the condominium unit. The Municipality maintained that the condominium unit was unique because it was situated on a "large condo tract[ ]." The Municipality contended that "the most typical and most realistic comparable sales to Whitestone would be free-standing single-family homes." The Municipality maintained that "[we're] not alleging that [Black owns] the land that [the condominium] sits on, we're alleging that there's an interest that needs to be … allocated."

At the conclusion of the hearing, the Board unanimously agreed with the Municipality's position. In its discussion, Board members recognized that the Municipality did not generally assess the land surrounding condominium units for property tax purposes, but found that "here they've got fairly substantial pieces of property." Because of the size of the land associated with Black's condominium unit, Board members found that "somebody's got to pay taxes on this land," and that since Black "clearly has the inclusive use of [the land in question]," the Municipality's calculation was done in "as honest a way as could [have been] done." The Board found that the amount of the assessment, $458,600, was appropriate given Black's 2002 purchase price of $435,000 and the "time value of sales." At that point, the Board discussed whether to shift the entire assessed value to the "building" category, as it had done in Black's 2004 appeal, or whether to simply affirm the Municipality's methodology. The Board ultimately affirmed the Municipality's assessment without modification.

Black appealed the Board's decision to the superior court, which affirmed the Board. The Municipality then moved for an award of half of its attorney's fees under Appellate

Rule 508(e).[4] It argued that it was the prevailing party and that "Black's appeal was completely meritless." Black opposed the Municipality's motion, maintaining that the motion was untimely under Rule 508(e) because it was filed following the superior court's order affirming the Board's decision, that the fees requested by the Municipality were excessive, and that his appeal was not frivolous. The superior court granted the Municipality's motion, awarding it fifty percent of its fees, or $4,510.75.

Black appeals the Board's decision and the superior court's award of attorney's fees.

## III. DISCUSSION

### A. Standard of Review

 In appeals of administrative agency decisions, we do not defer to superior court rulings.[5] Instead, we evaluate the merits of agency decisions directly. Because Board of Equalization decisions "involve[ ] questions of fact and law that involve agency expertise," they are reviewed under the reasonable basis standard.[6] We review awards of attorney's fees for abuse of discretion,[7] which we find when we are left with a definite and firm conviction based on the record as a whole that a mistake has been made.[8]

### B. The Land Associated with Black's Condominium Unit Is a Limited Common Element Appurtenant to Black's Condominium Unit.

 "The term condominium refers to a form of ownership in which a buyer owns a unit with an additional property ownership interest in the development's common property."[9] This "common property" can be either a common element[10] or a limited com-

---

4. The rule governs awards of attorney's fees in appeals of agency decisions to the superior court. *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 480 n. 3 (Alaska 1984).

5. *ACS of Alaska, Inc. v. Regulatory Comm'n of Alaska,* 81 P.3d 292, 295 (Alaska 2003).

6. *CH Kelly Trust v. Municipality of Anchorage, Bd. of Equalization,* 909 P.2d 1381, 1382 (Alaska 1996).

7. *Ogar v. City of Haines,* 51 P.3d 333, 335 (Alaska 2002).

8. *Hallam v. Alaska Airlines, Inc.,* 91 P.3d 279, 283 (Alaska 2004).

9. WAYNE S. HYATT, CONDOMINIUM AND HOMEOWNER ASSOCIATION PRACTICE: COMMUNITY ASSOCIATION LAW § 1.06(a)(1) (3d ed.2000) (citing the Uniform Common Interest Ownership Act § 1–103(8)).

10. In the Whitestone Estates declaration, common elements are defined as "each portion of the Common Interest Community other than a Unit and other than real estate in which Declarant has reserved Development Rights." For example, if

mon element.[11] Limited common elements are portions of the common property that are "reserved for the use of one or more, but less than all, owners."[12] Limited common elements, like common elements, are owned by the condominium association members themselves.[13] "In the condominium form of ownership, the owners own their property individually in fee simple or other fee interest.... In addition, however, the owners also have an undivided interest in the common property, an interest that is appurtenant to the unit."[14]

■ Black contends that because the declaration and plans on file at the district recorder's office do not classify the land associated with his condominium unit as a limited common element, it was inappropriate for the Municipality to tax him for that land. We disagree that the declaration and recorded plans fail to classify the land in question. The recorded plans, declaration, and Black's own testimony about actual use all support the conclusion that the land associated with Black's condominium unit is a limited common element.

Three Whitestone Estates development plans are on record with the district recorder's office. "Plats and plans are a part of the declaration and are required for all common interest communities except cooperatives."[15] Together with the declaration, the plans provide "a legally sufficient description of the

real estate included in the common interest community."[16] Black urges us to disregard all three of the recorded plans which he considers illegible. But close scrutiny of one of the plans allows the reader to make out a legible heading, titled "Limited Common Interest Lot Area," which appears to allocate 39,865 square feet, or approximately 0.92 acres, to Black's unit.

This allocation is consistent with the "large plan," a large (24″ by 36″), legible, but unrecorded, plan that the Municipality produced before the Board hearing.[17] Neither party disputes that the large plan was not recorded and therefore forms no part of the legal description of the common interest community; however, it is a legible development plan for Whitestone Estates and allocates the same amount of land to Black as the recorded plan—39,865 square feet, or 0.92 acres—in the form of a "limited common interest lot." The large plan is persuasive evidence because it mirrors the allocation in at least one of the recorded plans.

Furthermore, while parts of the declaration are ambiguously worded, at least two sections indicate that the land associated with Black's condominium unit was a limited common element.[18] First, the declaration includes the following provision:

The Declarant expressly reserves, for the benefit of each Unit Owner, an exclusive easement for use of those areas depicted

the Whitestone Estates Condominium Homeowners' Association built a playground to which all association members would have equal access, that would be considered a common element.

**11.** The Whitestone Estates declaration defines a limited common element as "the portion of the Common Elements allocated by the Declaration, or on the Plans, for the exclusive use of one or more but fewer than all of the Units."

**12.** AS 34.08.990(19); see also HYATT, *supra* note 9.

**13.** HYATT, *supra* note 9.

**14.** *Id.*

**15.** AS 34.08.170(a); *see also* AS 34.08.090(a) ("A common interest community may be created ... only by recording a declaration ... and a plat or plan.").

**16.** AS 34.08.130.

**17.** Black, who considers the large plan to be "little more than sales hype," disputes its authenticity and utility for three reasons: first, it was not recorded; second, it contains inaccuracies (although he does not contend that the plan inaccurately reflects the land surrounding each unit); and third, it does not denote horizontal boundaries. For the reasons explained above, we find it to be a useful comparison.

**18.** Neither the Board nor the superior court had the entire declaration before it; the Municipality successfully asked this court to supplement the record with the full declaration. *See* Alaska R.App. P. 210(i) ("If anything material to either party is omitted from the record on appeal ... the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected.").

on the Plans or otherwise described herein as Limited Common Elements, as assigned to each Unit Owner for his or her numbered unit.

There would have been no reason to reserve an exclusive easement for "use of those areas . . . assigned to each Unit Owner for his or her numbered unit" if those areas were intended to be common elements. Common elements are owned by (and accessible to) all condominium unit owners; limited common elements are owned by all condominium unit owners, but are only accessible to the owner of the appurtenant condominium unit.[19] It is therefore reasonable to infer that this passage refers to the land associated with individual condominium units.

Additionally, the declaration's landscaping provision supports a conclusion that the lot associated with Black's condominium unit is a limited common element. The declaration states that "[a]ll Limited Common Elements must be landscaped following construction of the Unit to which [they are] attached, and within the time period mandated by the Board." The notion that the limited common elements are "attached" to a particular condominium unit, and that those elements must be landscaped, supports the inference that the land surrounding each condominium unit is a limited common element associated with the condominium unit to which it is attached.

Finally, Black's own testimony about actual use supports our conclusion that the land in question is a limited common element.[20] In his testimony before the Board, Black indicated that he, as is common practice in a common interest community, would need to obtain permission from the condominium association in order to build a greenhouse fifty feet behind his condominium unit. But when the Board asked whether other condominium unit owners would be able "to put a greenhouse on . . . the back of what is marked as [Black's] property," Black responded that although theoretically they could do so "[i]f they got the approval of the association,"

because Black knew "everyone in the neighborhood, [he was] pretty confident that that would not happen." This testimony reflects unit owners' treatment of the land associated with their condominium units as limited common elements.

Based on the record as a whole, we are convinced that the land in question is a limited common element.

### C. Limited Common Elements Are Taxable to the Owner of the Condominium Unit to Which They Are Attached.

■ Alaska Statute 34.08.720 governs taxation of property in common interest communities and provides in relevant part:

(b) In a condominium or planned community,

(1) . . . each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate.

In Whitestone Estates, limited common elements are a "portion of the Common Elements allocated by the Declaration, or on the plans, for the exclusive use of one or more but fewer than all of the Units." For taxation purposes, limited common elements are subsumed under the "interest in the common elements" of the condominium unit to which they are attached.[21] Because the land under and around Black's condominium unit is a limited common element, it forms a part of his "interest in the common elements." The Municipality can therefore tax Black for his condominium unit and for the limited common element attached to his unit.

### D. The Assessment of Real Property Taxes Did Not Violate Black's Right to Equal Protection Under the Law.

Black claims that the Board valued his Whitestone Estates condominium unit differently than other condominium units in the

---

**19.** HYATT, *supra* note 9.

**20.** While common use is not relevant to the legal definition of a limited common element, we include Black's testimony to illustrate that the condominium units owners' use is consistent with

our conclusions as to the classification and taxation of land associated with each condominium unit.

**21.** *See* AS 34.08.720(b)(1).

Municipality of Anchorage and that therefore his constitutional right to equal protection under the law[22] was violated. The Municipality maintains that "other condominiums are treated differently" because the average yard space for a condominium in Anchorage is only 2,000 to 3,000 square feet, while Black has "a huge interest of land allocated to [his] exclusive use."

A threshold question in our equal protection analysis is whether similarly situated groups are being treated differently.[23] If it is clear that the two groups in question are not "'similarly situated,' this conclusion 'necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes.'"[24] And "[w]here there is no unequal treatment, there can be no violation of the right to equal protection of law. In the absence of any evidence of disparate treatment, there is no basis for an equal protection claim."[25]

Whitestone Estates condominium unit owners are not being treated differently from other condominium unit owners in the Municipality of Anchorage. All condominium unit owners are taxed on the "unit ... together with its interest in the common elements."[26] Whitestone Estates condominium unit owners are taxed in the same manner as other condominium unit owners in Anchorage: the Municipality taxes their units as well as their interest in the common elements, including the limited common elements attached to their condominium units.

The only possible difference between the Municipality's taxation of other condominium units and Black's Whitestone Estates condominium unit is in its breakdown of the property taxes between the "building" and "land" components. In appraising a condominium unit, the Municipality usually attaches a value only to the "building" component, zeroing

out the "land" component. But in Black's case, the Municipality chose to attach a value to both the "building" and the "land," as it generally does with single-family homes. This is a logical choice since the land attached to Whitestone Estates condominium units is at least thirteen times the size of the land attached to average condominium units in Anchorage.[27] In other words, the Municipality is taxing Black for the limited common element attached to his condominium unit, just as it does for other condominium unit owners. But because of the nature of the limited common element, the Municipality classifies it as "land" rather than grouping it under the "building" component of its appraisal. To the degree that this distinction in classification is material for equal protection purposes, it is justified because Black is not similarly situated to other condominium unit owners: the undisputed evidence shows that Black's condominium unit sits on a yard that is many times larger than the average condominium yard size in Anchorage. Thus, the Municipality's appraisal did not violate Black's right to equal protection under the law.

### E. The Board of Equalization Did Not Violate Black's Right to Due Process.

Black argues that the Board's ruling on his 2004 property tax appeal established the precedent that "Black's condominium should not have been assessed for any land." While the Municipality does not dispute that Black's 2004 taxes were listed under the "building" category, it contends that "[t]he [Board] in 2004 did not hold Black's land had no value. Rather in 2004 the [Board] decided to zero out the land and put it all into the building."

**22.** Alaska Const. art. I, § 1.

**23.** *Stanek v. Kenai Peninsula Borough,* 81 P.3d 268, 270 (Alaska 2003); *Matanuska–Susitna Borough Sch. Dist. v. State,* 931 P.2d 391, 397 (Alaska 1997).

**24.** *Alaska Inter–Tribal Council v. State,* 110 P.3d 947, 967 (Alaska 2005) (citing *Lauth v. State,* 12 P.3d 181, 187 (Alaska 2000)).

**25.** *Matanuska–Susitna Borough Sch. Dist.,* 931 P.2d at 397.

**26.** AS 34.08.720(b)(1).

**27.** The average yard space for a condominium in Anchorage is 2,000 to 3,000 square feet; Black's is close to 40,000 square feet.

We disagree that the Board's 2004 decision adjudicated the question whether the land associated with Black's condominium unit was taxable, and to whom. The specific reasoning for the Board's 2004 decision is difficult to discern.[28] But it appears from the hearing transcript that the majority's opinion was based on its desire to harmonize the valuation methodology it used for the condominium units in Whitestone Estates with the methodology used for other condominiums in the Municipality of Anchorage.

This reasoning does not imply that the Board found that the land under and around Black's condominium unit had no value and that, as Black argues, the "2004 assessment was ultimately based solely on the value of his building." Instead, it implies that whatever the value of the land under and around Black's condominium unit, the Board elected to lump that sum into the value of the condominium unit so that all condominium owners in Anchorage would have property tax assessments that were facially comparable—assessing taxes under the "building" category but not the "land" category. The Board increased the condominium unit's assessed value from $413,300 to $435,000, presumably to reflect the value of the land under and around Black's condominium.

Furthermore, even assuming that the Board based its 2004 decision on the theory that the land under and around Black's condominium unit had no value, as Black himself recognizes, administrative agencies like the Board of Equalization can change their rulings from prior years if "they first provide[ ] a reasoned and supportable basis for reaching a different result." In their discussion of Black's 2005 appeal, Board members fully explained their reasons for favoring a different method of calculating property taxes for Whitestone Estates condominium units. The Board came to the consensus that because Whitestone Estates condominium units feature significantly larger plats than other condominiums in Anchorage, a different method of valuation was merited in this case.

Because the Board did not adjudicate whether Black's land was taxable in its 2004 decision and because it provided a reasonable explanation for why it reached its decision in 2005, its different outcome in the later appeal was neither arbitrary nor capricious.[29]

### F. The Board of Equalization Did Not Err in Refusing To Reduce the Building Component of Black's Property Tax Assessment from $400,400 to $294,000.

Black contends that the Board erred by declining to reduce the assessment of his condominium unit from $400,400 to Black's proposed $294,000. He claims that "the [Board] summarily concluded, on the basis of nothing, that since Black paid $435,000 for his condominium [unit] in May 2002, then it was probably appropriate to approve the [Municipality's] valuation of $58,200 for land and $400,400 for building in 2005." Because he maintains that the Board failed to articulate a substantial basis for its decision, Black argues that we should "direct the [Board] to revise the building component of Black's condominium to $294,000," which is the average of the two comparables Black feels most closely approximate the value of his condominium unit.

The Municipality contends that the assessor had the discretion to determine the "full and true value" of the condominium and that the municipal assessor did not abuse his discretion in this case.[30] The Municipality points out that the total assessed value—

**28.** The first page of the April 29, 2004 tax appeal decision is in the record at page 122, but the following pages, which would normally include an outline of the Board's reasoning and decision, are neither in the record nor in the excerpts of record.

**29.** See May v. State, Commercial Fisheries Entry Comm'n, 168 P.3d 873, 883 (Alaska 2007) ("Once the departure from precedent is explained, the reviewing court 'is limited to [determining] whether the rationale is so unreasonable as to be arbitrary and capricious.'" (quoting Michigan v. Thomas, 805 F.2d 176, 184 (6th Cir.1986))).

**30.** See Fairbanks N. Star Borough Assessor's Office v. Golden Heart Utils., Inc., 13 P.3d 263, 267 (Alaska 2000) ("Provided that the assessor has a reasonable basis for a valuation method, that method will be allowed 'so long as there was no fraud or clear adoption of a fundamentally wrong principle of valuation.'").

$458,600—is only 5.4 percent more than the total Black paid for his interest in the common interest community—$435,000.

 Appraisal of property in Anchorage is governed by the Alaska Constitution,[31] Alaska Statutes, and Anchorage Municipal Code. Anchorage Municipal Code 12.15.030A mandates that "[t]he assessor shall assess real property at its full and true value as of the first day of the assessment year, except as provided by state law." Alaska Statute 29.45.110(a) provides, in relevant part:

> The assessor shall assess property at its full and true value as of January 1 of the assessment year. . . . The full and true value is the estimated price that the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels.

While these provisions offer some broad guidance, "the precise method for determining the 'full and true value' of property is within the assessor's discretion."[32]

 In order to estimate the full and true value of Black's interest, the assessor selected five properties and compared their values to the value of Black's condominium unit. All of the comparables were single-family homes.[33] The base costs of these homes ranged from $260,000 to $305,800, while Black's condominium unit's base cost was $338,600. The average base cost of the five comparables was $279,400.[34]

When the Board decided Black's 2005 appeal, it did not address the comparables to determine whether Black's condominium unit had been fairly assessed. Instead, the Board focused its discussion on whether to assess property taxes against the land under and around Black's condominium unit, then determined that $458,600 was a fair amount to use as the assessed value. As one Board member concluded, "[t]he bottom line is, 2002, he willingly paid $435,000 for his house, and what's the value today? I think that [$458,600] is not clearly excessive or overvalue." Once it decided to affirm the Municipality's total assessed value, the Board turned to the decision of how to allocate that assessed value, and ultimately affirmed the Municipality's allocation.

Black purchased his interest in the common interest community for $435,000 three years prior to filing this appeal. Given the statutory guidance provided to assessors—that the "full and true value is the estimated price that the property would bring in an open market and under the then prevailing market conditions"[35]—the Board had a reasonable basis for concluding that $458,600 was an appropriate total assessed value. This reflects an increase of approximately five and a half percent[36] over the course of one year,[37] a modest increase given the appraiser's estimated "8 to 11% per year market appreciation for single family homes in the Municipality of Anchorage" from 2001 to 2004.

While the Board's failure to discuss the discrepancy between the cost of the comparables and the valuation of Black's interest is of some concern,[38] given the deference we show assessors in their valuation of real proper-

---

**31.** Alaska Const. art. IX, § 3 ("Standards for appraisal of all property assessed by the State or its political subdivisions shall be prescribed by law.").

**32.** *Fairbanks N. Star Borough Assessor's Office,* 13 P.3d at 268.

**33.** Black does not dispute that this was appropriate, "at least in establishing the building component value for condominiums."

**34.** ($260,000 + $266,300 + $305,800 + $294,100 + $270,800) / 5 = $279,400.

**35.** AS 29.45.110(a).

**36.** ($458,600–$435,000) / $435,000 = 5.43%.

**37.** Black's interest was assessed at $435,000 in 2004.

**38.** *See Lindhag v. State, Dep't of Natural Res.,* 123 P.3d 948, 953 (Alaska 2005) ("An administrative agency must make findings of fact and conclusions of law regarding all issues that are both 'material' and 'contested.' If these findings or conclusions are insufficient to permit intelligent appellate review, we will remand the case to the agency for further deliberation." (internal citation omitted)).

ty,[39] we cannot say the valuation was erroneous.

### G. No Other Landowner Is Paying Property Taxes on the Land Surrounding Unit 1.

Black also contends that he should not be held liable for taxes on the land under and around his condominium unit because "another landowner is already being taxed for the land in question." He maintains that "in a condominium development like Whitestone Estates, the 'remainder' is that portion of the real estate not designated for common ownership."[40] Black argues that the owners of Unit 7 own the remainder, for which they were originally assessed $753,100 in 2005. He further contends that this remainder comprises all of the land in Whitestone Estates except the condominium units themselves.

The Municipality contends that "[t]he [r]emainder owned by the owners of [U]nit 7 and the limited common elements allocated to Black *are not* the same land." Instead, the Municipality argues, the "remainder" consists of "the development rights to unit 11—which has not been built—and to the large undeveloped section in the extreme southwest corner of the map."

Black points to no evidence that the remainder is other than as described by the Municipality. As the Municipality explained:

[O]ther remainder parcels . . . usually have . . . public sewer and public water[, but the Whitestone Estates remainder is] [l]ow density because it [did] not have public sewer and public water, it's well and septic. It should have been valued [as] low density

land. It's the only one we have valued that way because it's the only one that is this way.

Because Black provided no evidence to refute the Municipality's explanation of what constitutes the Whitestone Estates remainder, the Board of Equalization had a reasonable basis for concluding that the Municipality was not double-taxing the property under and around Black's condominium unit.

### H. The Superior Court Did Not Err in Its Award of Attorney's Fees.

Black contends that the superior court's decision to award the Municipality fifty percent of its attorney's fees "represents an abuse of discretion and should be eliminated as contrary to the appellate rules or, in the alternative, be greatly reduced to be in-line with the fees customarily awarded in administrative appeals." He maintains that the superior court misapplied Rule 508(e) by allowing the award of attorney's fees following its decision affirming the Board, because the rule indicates that "[i]f such an allowance is made, the clerk shall issue an appropriate order awarding fees *at the same time* that an opinion or an order under Rule 214 is filed." (Emphasis added.) Black further argues that the fee award was excessive under our ruling in *Stalnaker v. Williams*,[41] and suggests a maximum award of $250.

Neither the Municipality's choice to file a separate motion for attorney's fees nor the amount of the attorney's fees awarded was error. As the Municipality argues, "attorney fees may . . . be awarded in response to a separate motion"[42] provided that it is "filed within a reasonable time period."[43]

---

**39.** See *Fairbanks N. Star Borough Assessor's Office*, 13 P.3d at 267–68.

**40.** Black cites AS 34.08.990(8) for this proposition, which states:

 (8) "condominium" means a common interest community in which
 (A) portions of the real estate are designated for separate ownership;
 (B) *the remainder of the real estate is designated for common ownership solely by the owners of those portions;* and
 (C) the undivided interests in the common elements are vested in the unit owners[.]
(Emphasis added.)

**41.** 960 P.2d 590, 598 n. 14 (Alaska 1998) (Rule 508(e) awards "typically do not exceed $1,000 [and] are usually less, and often much less, than about twenty-five percent of the prevailing parties' actual fees").

**42.** *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 480 (Alaska 1984) ("The State did not include attorney's fees in its bill of costs, however, but requested them by separate motion. There is nothing improper in this procedure.").

**43.** *Pruitt v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 825 P.2d 887, 895 (Alaska 1992) ("It is important that a motion for attorney's fees be made reasonably promptly after judgment be-

This court's settled interpretation of Rule 508(e)[44] leaves no doubt that the Municipality did not err by filing its separate motion for attorney's fees just seven days after learning that it was the prevailing party.[45]

In response to Black's argument that the award was excessive, the Municipality contends that the superior court's award of half of its attorney's fees was not an abuse of its discretion. We agree. Black's reliance on *Stalnaker* is puzzling, given that an award of eighty-six percent of actual attorney's fees was affirmed in that case, whereas the superior court only awarded the Municipality fifty percent of its actual attorney's fees.[46] We have previously limited awards under Rule 508(e) by indicating that "the award 'should only partially compensate the prevailing party for attorney's fees.'"[47] Here, the Municipality obtained an award of fifty percent of its attorney's fees incurred during the course of Black's superior court appeal. This award is not excessive and was not error.

The superior court did not provide an explanation of its attorney's fees award. While it is helpful when the awarding court explains its reasons for awarding attorney's fees,[48] the lack of specific findings in Rule 508 attorney's fees awards does not constitute an abuse of discretion.[49]

## IV. CONCLUSION

Because the land under and around Black's condominium unit is a limited common element, taxable to the beneficiary unit owner, and because the Board did nothing to offend Black's constitutional rights, we AFFIRM the Board's ruling on Black's appeal of his real property taxes. We also AFFIRM the superior court's award of attorney's fees.

MATTHEWS, Justice, not participating.

---

cause the losing party may base his decision whether to appeal on the merits on the size of the adverse award of attorney's fees.").

**44.** Rule 508(e) states that

[a]ttorney's fees may be allowed in an amount to be determined by the court. If such an allowance is made, the clerk shall issue an appropriate order awarding fees at the same time that an opinion or an order under Rule 214 is filed. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

**45.** *See Pruitt,* 825 P.2d at 895–96.

**46.** 960 P.2d at 598.

**47.** *Id.* at 597 (quoting *State v. Cacioppo,* 813 P.2d 679, 685 (Alaska 1991)).

**48.** *See Pioneer Constr. v. Conlon,* 780 P.2d 995, 1001 (Alaska 1989) (superior court's explanation of an attorney's fees award "serves the same purpose as findings in general. Appellate review is facilitated by demonstrating what factors were considered, careful decision making is promoted, and the parties are aided in their determination as to whether to appeal."); *cf. In re Schmidt,* 114 P.3d 816, 826 (Alaska 2005) (in Rule 95 attorney's fees award, trial court's failure to explain its reasons for assessing attorney's fees "cause[d] us to speculate about the superior court's reasoning and the basis for the sanction").

**49.** *North Slope Borough v. Barraza,* 906 P.2d 1377, 1382 (Alaska 1995); *Rosen v. Bd. of Public Accountancy,* 689 P.2d 478, 480 (Alaska 1984).