*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LINK C. FANNON, | ) | |
| | ) | Supreme Court No. S-16724 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-14-01915 CI |
| v. | ) | |
| | ) | O P I N I O N |
| NOLA POLO, PERSONAL | ) | |
| REPRESENTATIVE OF THE | ) | No. 7332 – February 8, 2019 |
| ESTATE OF JUNE SCHEELE, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Wayne G. Dawson, Dawson Law Group, LLC, Anchorage, for Appellant. Danny W. Burton, Eagle River, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The primary issue in this appeal is whether the superior court correctly interpreted two property restrictions, one found in a subdivision declaration and the other in a deed's greenbelt covenant, to ultimately determine that the deed's greenbelt covenant is enforceable. We conclude that the superior court correctly applied

interpretation rules by looking at the instrument language without regard to extrinsic evidence and correctly ruled that the subdivision declaration did not preclude the deed's greenbelt covenant. We therefore affirm the superior court's decision.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Between 1984 and 1986 August Scheele obtained requisite permitting to create Scheele Solid Subdivision in Wasilla. The subdivision consists of seven lots; one lot — Lot 1, Block 1 — has a water well historically supplying the other lots through a subdivision water system.

In 1990 August and the other owners of the Scheele Solid Subdivision lots entered into a covenant (the Declaration) prohibiting using the lots for: (1) residential housing; (2) the sale of alcoholic beverages; (3) junkyards, dumps, or rubbish disposal or storage; and (4) churches and places of worship. The Declaration also provided that all current and future owners could enforce the restrictions "through any proceedings, at law or in equity," specifically including injunctive relief.

In 1992 August conveyed the five lots he owned, including Lot 1, Block 1, to himself and his wife, June Scheele, as tenants by the entirety. August died a few years later. In 1998 June conveyed Lot 1, Block 1 to a new owner; they signed a separate agreement for the new owner to assume responsibility for the well and water system. The quitclaim deed for Lot 1, Block 1 was signed by the buyer; the deed was made subject to assumption of the water system obligations and the following restrictive greenbelt[1] covenant (Greenbelt Covenant):

_____

[1]   A greenbelt is "[a]n undeveloped area of land around a city, esp. one set aside for parks or farmland or preserved as natural wilderness." *Greenbelt*, BLACK'S LAW DICTIONARY (10th ed. 2014).

**Allowed Uses**. Lot 1, Block 1 Scheele Solid Subdivision may not be used for any purpose other than use as a greenbelt and use for continued maintenance and operation of the water system located thereon. For the purposes of this covenant, "greenbelt" means maintenance of trees and natural cover in those areas and of the kind, as presently exist. In interpreting this covenant, a court should resolve doubts in meaning against the free use of land, rather than in favor of the free use of land. (Emphasis in original.)

The Greenbelt Covenant provides for enforcement

by the grantor, by any owner of land within Scheele Solid Subdivision, by any person owning land within one-half mile or any boundary of Lot 1, Block 1 . . . or by any public agency, and which may be enforced through injunction or any other remedy available at law or in equity.

June passed away in November 2012 and her daughter, Nola Polo, was appointed as the personal representative of June's estate.

In April 2014 Link Fannon acquired Lot 1, Block 1, along with the well and water system, from an owner subsequent to June Scheele's 1998 transaction. The deed to Fannon made no mention of the Greenbelt Covenant. Fannon intended to increase the well's production to service at least another ten acres of neighboring commercial property and to "sell bulk water" to the Department of Transportation for a Parks Highway upgrade. Fannon then began clear-cutting trees on Lot 1, Block 1.

**B.  Proceedings**

**1.  Preliminary injunction**

In June 2014 June's estate brought suit against Fannon for violating the Greenbelt Covenant's terms; the estate sought damages, a preliminary injunction against further clear-cutting, and an affirmative injunction to restore trees. The estate requested expedited consideration of its request for a preliminary injunction. After hearings in July

and August, the superior court entered a preliminary injunction barring further tree clearing but required the estate to post a $60,000 bond before the injunction took effect.

Fannon answered the complaint, counterclaiming, among other things, that the Greenbelt Covenant conflicted with the Declaration. Fannon did not assert that either covenant was ambiguous.

The estate moved for partial summary judgment in March 2015, arguing that no genuine issues of material fact precluded the court from granting a permanent negative injunction. Fannon requested additional time to respond, which the court granted. By April the estate's attempts to post a bond to effectuate the preliminary injunction had failed. The court granted Fannon's motion to lift the preliminary injunction, and Fannon resumed clear-cutting trees on the lot.

### 2. Motion to determine rule of law

The estate asked the court to determine the rule of law on several issues, including interpretation of the covenants. The court understood the estate to be requesting the following rulings: (1) "intent is not relevant in interpreting covenants" and (2) "interpretation of covenants is a question of law."

Fannon opposed the motion and simultaneously cross-moved for summary judgment, asserting that no genuine issues of material fact precluded the court from determining that the Greenbelt Covenant was void because it contradicted the Declaration's plain meaning and its drafters' intent. Fannon repeatedly asserted that the Declaration is unambiguous and restricts the lots to commercial use only, but he made no argument about the Greenbelt Covenant's ambiguity.

The court partially granted the estate's motion, ruling that the law articulated in *HP Ltd. Partnership v. Kenai River Airpark, LLC* controlled interpretation of the covenants.[2]

### 3. Motion to compel deposition of the estate's attorney

In September, by agreement of the parties, the court stayed its decision on the two summary judgment motions. Fannon then moved to compel the estate's attorney's deposition and the production of any documents in his possession related to Scheele Solid Subdivision. Fannon argued that the information was relevant because the attorney had drafted both the Declaration and the Greenbelt Covenant and therefore was the sole person who could testify to the deceased founders' intent. Fannon contended that the work product was not privileged because it "was not done in preparation or anticipation of litigation with [Fannon]," and he later argued that the estate had waived the attorney-client privilege through its discovery responses.

The superior court initially granted Fannon's motion to compel, agreeing that the estate had waived the attorney-client privilege. But when the estate moved for reconsideration, the court changed its decision. The court held that because Fannon did not contend that the Declaration was ambiguous, "[e]xtrinsic evidence is irrelevant" and the estate's attorney's testimony about the founders' intent would be "inadmissible." The court also disagreed with Fannon's assertion, raised for the first time in his reconsideration opposition, that the Greenbelt Covenant was ambiguous. The court

---

[2]  270 P.3d 719, 729 (Alaska 2012) (stating that, in interpreting covenant, "the plain meaning governs" if covenant is unambiguous; if covenant is ambiguous it should be "construed within [its] own four corners . . . to effectuate the intent of the parties" to the extent that intent "serves to limit the scope and effect of the restriction" (quoting *Hurst v. Victoria Park Subdivision Addition No. 1 Homeowners' Ass'n*, 59 P.3d 275, 278 (Alaska 2002))).

granted the estate's motion for reconsideration, and it denied Fannon's motion to compel the estate's attorney's deposition.

### 4. Summary judgment order

In March 2016 the court granted the estate's motion for partial summary judgment and denied Fannon's. The court ruled it would not consider "[e]xtrinsic evidence of the covenantors' intents" for either restrictive covenant. Finding that neither covenant presented any ambiguity, the court limited its inquiry to the plain language of the restrictive covenants. The court rejected Fannon's contention that the Declaration required the subdivision lots to be used only for commercial purposes; the court found that such a restriction was neither contained in the Declaration nor implied by the list of prohibited activities. The court also found that the Declaration was not intended to be "the exclusive source of restrictions on the lots" and thus did not prohibit lot owners from imposing subsequent restrictions upon their land. Because the Declaration "d[id] not prohibit either of the activities protected by the [Greenbelt Covenant]" or "prevent the further restriction of [the subdivision's lots]," the court held that the Declaration and the Greenbelt Covenant did not conflict. Concluding that the Greenbelt Covenant "is valid and enforceable" and finding that Fannon had violated it, the court entered a permanent prohibitory injunction preventing Fannon from conducting activities outside the Greenbelt Covenant's scope.

The summary judgment ruling narrowed the issues, and the resulting trial focused almost entirely on damages and affirmative injunctive relief. The superior court found that the estate "failed to establish damages" or to provide a reason "why the greenbelt should be restored." The court reiterated that the Greenbelt Covenant is valid and enforceable, referencing the order granting partial summary judgment. The court concluded that "[Fannon's] plans to upgrade the water system c[ould] still be accomplished without violating the [Greenbelt Covenant] by utilizing" an existing right-

of-way easement granted to the Matanuska-Susistna Borough. The court then entered another permanent injunction, ordering Fannon to "refrain from further activities inconsistent with the 1998 [G]reenbelt [C]ovenant."

Fannon requested clarification of the superior court's order, asking whether certain activities qualified as "continued use and maintenance of the water system" and what it meant to "fully utiliz[e] the Borough's prior and current right of way easements." The court ruled that Fannon's questions "were not at issue at trial and therefore are not properly before the [c]ourt."

Fannon appeals the court's decisions: (1) granting the estate's motion for summary judgment and denying his; (2) denying his motion to compel the estate's attorney's deposition; and (3) denying his clarification request.

## III. STANDARD OF REVIEW

"We review grants of summary judgment de novo,"[3] "affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[4] "The interpretation of a covenant is a question of law to which we apply our independent judgment."[5] Rulings on motions for reconsideration are reviewed for abuse of discretion.[6]

---

[3] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[4] *Hagen v. Strobel*, 353 P.3d 799, 802 (Alaska 2015) (quoting *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012)).

[5] *HP Ltd. P'ship*, 270 P.3d at 726 (quoting *Hurst*, 59 P.3d at 277).

[6] *See Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015).

## IV.   DISCUSSION

### A.   Fannon Did Not Preserve His Argument That The Greenbelt Covenant Is Ambiguous.

Fannon argues that the Greenbelt Covenant is "susceptible to multiple interpretations": one requiring courts to construe its provisions against the free use of land; another "allowing the owner of Lot 1, Block 1, to develop and grow the water system and distribution." Fannon contends the superior court erred by failing to identify this ambiguity and "determine the scope and meaning of the full agreement in light of all available evidence."

But Fannon did not preserve this argument; he failed to properly raise it before the superior court. He made this argument only in his opposition to the estate's motion for reconsideration of a discovery order. The court rejected the argument in that context. This was not error, as a court is not required to consider an issue raised for the first time in the context of a motion for reconsideration.[7] Because Fannon failed to make this argument at any other point unrelated to the motion for reconsideration, the argument is forfeited, and we do not need to consider it on appeal.

### B.   The Greenbelt Covenant Does Not Conflict With The Declaration, And Fannon's Other Arguments About The Greenbelt Covenant Lack Merit.

Fannon contends that because June added the Greenbelt Covenant "unilaterally," and because the Covenant benefits a residence outside the subdivision at the expense of the subdivision's commercial purpose, the Greenbelt Covenant is incompatible and conflicts with the Declaration's express intent. But we see no error in the superior court's interpretation of the interaction between the two covenants, nor its

---

[7]     *See McCarter v. McCarter*, 303 P.3d 509, 513 (Alaska 2013) (holding argument raised for first time in motion for reconsideration waived).

conclusion that they are compatible. "Where the language of a covenant is not ambiguous, the plain meaning governs."[8]

The superior court, after concluding that no ambiguity existed in either the Declaration or the Greenbelt Covenant, appropriately limited its analysis to the plain meaning of both covenants.[9] The Declaration's text does not delineate an "express intent to limit the subdivision to commercial use only," as Fannon contends. The Declaration makes clear that the subdivision is non-residential, but it does not prohibit a lot's use as a greenbelt. Nor does the Declaration emphasize that courts should construe the document's intent to maximize each lot's commercial productivity. Perhaps most significantly, the Declaration does not reference the water system on Lot 1, Block 1 at all, or place any mandates on its use or disuse.

We further conclude, contrary to Fannon's contention that the Greenbelt Covenant and the Declaration are incompatible, that the Greenbelt Covenant does not conflict with the Declaration. By its plain language, the Greenbelt Covenant merely adds a new restriction on Lot 1, Block 1 — a restriction on which the Declaration is silent.

---

[8] *HP Ltd. P'ship*, 270 P.3d at 729 (quoting *Hurst*, 59 P.3d at 278).

[9] *See id.* at 729 ("Covenants are construed within their own four corners." (quoting *Hurst*, 59 P.3d at 278)); 20 AM. JUR. 2D *Covenants, Etc.* § 170 (2015) ("Where the language of a restrictive covenant is plain and unambiguous, a court is limited to applying the words of the agreement and is prohibited from considering extrinsic evidence regarding the parties' intent . . . .").

Fannon argues that the superior court erred by granting the estate's motion for reconsideration and denying his motion to compel the estate's attorney's deposition. But extrinsic evidence like the information Fannon sought in the deposition — details about the Declaration's drafters' intent — is irrelevant because the Declaration is unambiguous. *See HP Ltd. P'ship*, 270 P.3d at 729. We thus see no error in the superior court's determination that the deposition was "not reasonably calculated to lead to admissible evidence," and we do not reach Fannon's remaining arguments about the estate's waiver of the attorney-client privilege.

The Greenbelt Covenant does not require that other lots in the subdivision also preserve tree cover nor does it grant the purchaser of Lot 1, Block 1 "rights . . . that are inconsistent with rights granted earlier" in the Declaration.[10]  It also does not lift the Declaration's prohibitions on building a junkyard, residence, liquor store, or church, and is therefore not in contravention of the Declaration.

Fannon's argument that the Greenbelt Covenant "dooms" other property owners to an eventual loss of their water supply and "is completely antithetical" to the subdivision's commercial purpose is belied by the plain text of the covenant.  The Greenbelt Covenant allows for "use as a greenbelt *and* use for continued maintenance and operation of the water system located thereon." (Emphasis added.)  Any owner of Lot 1, Block 1 may do what is reasonably necessary to prevent the well from falling into disrepair or dysfunction and continue the subdivision's enterprises.

Fannon's argument that the Greenbelt Covenant is void because it constitutes a "unilateral revision to [a] common plan or general scheme of development" is unavailing.  The Greenbelt Covenant does not amend, modify, or conflict with the Declaration.  And June's putative intent to benefit property outside the subdivision is irrelevant; a covenant is not invalid simply because it confers benefits upon a third party — in this case, the estate and future owners of the Blodgett Lake residence.[11]  That June

---

[10]     *See* 1 RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.12 (AM. LAW INST. 2000) ("Except as enabled by operation of a recording act, the creator of [a] servitude lacks the power to grant rights to later purchasers that are inconsistent with rights granted earlier.").

[11]     *See* 1 RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.6 (AM. LAW INST. 2000) (noting "the benefit of a servitude may be granted to a person who is not a party to the transaction that creates the servitude"); *see also* cmt. e. (stating "the parties to a transaction creating a servitude may freely create benefits in third parties, whether the servitude is a covenant, easement, or profit").

personally benefitted from a restriction placed on her own property does not invalidate the Greenbelt Covenant or place it in conflict with the Declaration.

We conclude that the Greenbelt Covenant does not conflict with the Declaration, and we affirm the superior court's summary judgment ruling.[12]

## V.    CONCLUSION

The superior court's decision is AFFIRMED.

---

[12]    Fannon asserts in his points on appeal that the superior court erred by enjoining him from engaging in further activities inconsistent with the Greenbelt Covenant "without delineating what future use, maintenance or modification to the water system is allowed under the injunction." Fannon makes only a vague reference to this line of argument in his opening brief, claiming that the injunction prohibits him from "work[ing] on" or "repair[ing]" the water system. Because he failed to develop the argument in his brief, we will not consider it on appeal. *See Petersen v. Mut. Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal."). Even had Fannon developed this argument in his opening brief, we agree with the superior court that the questions he raised in his clarification request were not properly before the superior court, and it thus would be improper to consider them on appeal. *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) ("[I]ssues not properly raised in the trial court will not ordinarily be considered on appeal.").