*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NORMAN RANDLE, | ) |
| | ) Supreme Court No. S-17570 |
| Appellant, | ) |
| | ) Superior Court No. 3HO-18-00247 CI |
| v. | ) |
| | ) O P I N I O N |
| BAY WATCH CONDOMINIUM | ) |
| ASSOCIATION, | ) No. 7537 – June 18, 2021 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Jane F. Kauvar and Jason M. Gist, Judges.

Appearances: Norman Randle, pro se, Homer, Appellant. Notice of nonparticipation filed by Charles G. Evans, Law Office of Charles G. Evans, Homer, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A man's condominium unit has the only access to a crawl space containing water pipes that serve several other units. The condominium association's president and a maintenance man entered the unit twice, with the owner's permission, to address water-related maintenance issues in the crawl space, where they identified what they thought

were serious problems of leaking and mold. But the unit owner denied their further requests for access to deal with these problems.

The association brought suit against the unit owner, alleging that he had caused damage by concealing the leaking in the crawl space and making his own negligent repairs; it also asked for a declaratory judgment concerning its right of entry. The superior court, after an evidentiary hearing, granted a preliminary injunction allowing further inspections. After those inspections revealed that repairs were not needed after all, the association dropped its negligence claim. But it moved for summary judgment on its request for declaratory relief, which the superior court granted, deciding that the association's declaration allowed reasonable entry for purposes of inspection and repair.

The unit owner appeals. We conclude that the superior court did not abuse its discretion in issuing the preliminary injunction or err in granting summary judgment on the claim for declaratory relief. Nor do we find any abuse of discretion in the superior court's procedural rulings or its award of attorney's fees to the association. We therefore affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Norman Randle owns and lives in a unit at Bay Watch Condominiums in Homer. Beneath his unit is a crawl space that is a common area; it contains piping and water for several units in the building and can be accessed only through his unit.

In May 2018 David Duke, president of the Bay Watch Condominium Association, and Keith Nelson, a maintenance man, were working on a leak in Duke's unit, which is above Randle's. With Randle's permission, they entered his unit so they could access the crawl space and turn off the water. In the crawl space Duke and Nelson saw what Duke described as "a minimum of three to four leaks" and "black stuff" that

they "surmised . . . might be mold." They informed Randle of what they had seen and told him they would have to have a contractor come in to assess the damage. But Randle replied that "mold is nothing to worry about" and that he couldn't afford any additional repairs to his unit. Over the next week, Duke and Nelson requested entry to Randle's unit to access the crawl space, and Randle refused to allow it.

### B. Proceedings

In September 2018 Bay Watch filed a complaint against Randle in superior court alleging essentially two claims: (1) one for declaratory relief that the association's declaration gave it certain rights of access to the common area underneath Randle's unit and that Randle had violated the declaration by making unauthorized and negligent repairs in the crawl space; and (2) one for damages related to structural issues that Bay Watch suspected Randle had negligently caused. Randle denied making unauthorized repairs and asserted that Bay Watch had no reason to enter his unit.

Bay Watch moved for a preliminary injunction, asking the court to order Randle to allow Bay Watch to access the common area below his unit to prevent further irreparable harm to the building's plumbing system. The court held an evidentiary hearing at which both Duke and Nelson testified about their dealings with Randle and their observations in the crawl space. Randle countered that there was no emergency and that Bay Watch's entry was not justified. But the court granted the preliminary injunction, requiring Randle to allow Bay Watch "to enter [Randle's] unit to access the crawl space and common space to assess the situation and to determine what work may need to be done."

Representatives of Bay Watch then inspected the area underneath Randle's unit and concluded that no repairs were necessary after all; they also found no evidence of water damage. Bay Watch therefore voluntarily dismissed its second count, the negligence claim for damages. It moved for summary judgment on its claim for

declaratory relief, asking the court to interpret the association's declaration to allow it access to the area below Randle's unit whenever it considered it necessary for purposes of inspection and repair.

The court held a hearing during which it heard argument from the parties. It also heard from a friend of Randle's, purporting to be his assistant, who read a statement and argued extensively on his behalf. The court worked through the relevant portions of the association's declaration orally, ultimately concluding that Bay Watch has "the right of entry to access the common areas through Mr. Randle's unit when the association deems it proper and necessary." The court reiterated its holding in a later written order that "restrained [Randle and his agents] from making [their] own interpretation of the governing documents of the Bay Watch [Condominium Association]" and ordered that Randle "shall, with reasonable notice, allow Bay Watch entry through his Unit 1 to gain access to the crawl space for reasonable inspection and repairs to the Building." The court determined that Bay Watch was the prevailing party and awarded it attorney's fees of $5,000.

Randle filed this appeal, in which Bay Watch does not participate.

## III.   STANDARD OF REVIEW

We review the superior court's grant of a preliminary injunction for abuse of discretion[1] and its grant of summary judgment de novo.[2] Also reviewed for abuse of discretion are the superior court's limitations on lay representation,[3] its "determination

---

[1]   *City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 455 (Alaska 2006).

[2]   *Peterson v. State, Dep't of Nat. Res.*, 236 P.3d 355, 361 (Alaska 2010).

[3]   *See Arnett v. Baskous*, 856 P.2d 790, 792 (Alaska 1993) (reviewing denial of lay counsel assistance for abuse of discretion).

of prevailing party status,"[4] and its award of attorney's fees.[5]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion Or Err By Granting Bay Watch's Request For A Preliminary Injunction.

Randle challenges the superior court's grant of a preliminary injunction on several interrelated grounds. He first argues that there was too little evidence of an emergency to justify injunctive relief; specifically, he argues that the court should have required Bay Watch to produce pictures of the alleged damage, which "would have given credence to" its allegations, and that the court should have required more briefing on "Bay Watch's fictitious emergency." He accuses the court of failing to consider his evidence and of relying instead on Duke's "fabricated lies." But the court plainly had evidence before it sufficient to justify a preliminary injunction.

"A plaintiff may obtain a preliminary injunction by meeting either the balance of hardships or the probable success on the merits standard."[6] The superior court in this case used the balance of the hardships standard, which requires, among other elements not challenged here, "balancing the harm the plaintiff will suffer without the

---

[4]    *Halloran v. State, Div. of Elections*, 115 P.3d 547, 550 (Alaska 2005).

[5]    *Black v. Municipality of Anchorage, Bd. of Equalization*, 187 P.3d 1096, 1099 (Alaska 2008).

[6]    *Alsworth v. Seybert*, 323 P.3d 47, 54 (Alaska 2014) ("A preliminary injunction is warranted under [the balance of hardships] standard when three factors are present: '(1) the plaintiff must be faced with irreparable harm; (2) the opposing party must be adequately protected; and (3) the plaintiff must raise serious and substantial questions going to the merits of the case; that is, the issues raised cannot be frivolous or obviously without merit.' " (quoting *State v. Kluti Kaah Native Vill. of Copper Ctr.*, 831 P.2d 1270, 1273 (Alaska 1992))).

injection against the harm the injunction will impose on the defendant."[7]

At the hearing the court explicitly found "that there [was] water leaking in that area underneath [Randle's] unit that [could] affect the common area of these other condo owners." The court continued, "If these leaks continue unabated, if [Bay Watch] [is] not allowed to get in and do anything to stop the leaks, the Court finds that there would be harm to the other condo owners . . . and that there is a necessity to have this looked at." These findings are supported by the evidence and not clearly erroneous. Both Duke and Nelson testified about leaks and mold underneath Randle's unit. Nelson, an experienced maintenance man and licensed contractor, testified that he was worried about the stability of the joists, explaining that they were "sagging" and that "three joists . . . in a row . . . were pretty wet." He testified that the situation was "dangerous to [Randle], that's why [he] even brought it up." The court was entitled to accept this testimony; we do not second-guess its credibility findings.[8]

On the other side of the balance, the harm Randle claimed was an invasion of his privacy. But the court could reasonably conclude that this claimed harm was outweighed by the potential harm alleged by Bay Watch. The court observed that Bay Watch was making only a "limited request" that included giving notice and setting up an agreeable time for access. Directing its remarks to Randle, the court explained, "[B]ased on the testimony . . . about the leaks down there and potential mold, [and] because you happen to own a unit that is the only way to access the common area, . . .

---

[7]     *Id.*

[8]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) ("We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

your privacy has to give way to the other condo owners' right to have this looked at, because it's the only way that it can be done." We see no abuse of discretion in the court's weighing of the relative harms and its decision to issue the requested injunction.

Randle argues that the superior court erroneously shifted the burden of proof from Bay Watch, requiring him to prove why a preliminary injunction should *not* be granted.[9] He points to the court's statement when summarizing the evidence that it had not "heard anything from [Randle] that indicates that there is not something [in the crawl space] that should be looked at." But the court had heard evidence from Duke and Nelson that there *was* "something that should be looked at"; the court was simply noting the absence of contrary evidence, not shifting the burden of proof.

Finally, Randle argues that the injunction violated several of his federal and state constitutional rights, including his rights to due process, equal protection, privacy, and "to be secure in his home." But his constitutional argument is made in one conclusory sentence without any analysis, and we therefore do not consider it.[10] We conclude that the superior court neither abused its discretion nor erred in issuing the preliminary injunction.

### B. The Superior Court Did Not Err By Granting Summary Judgment To Bay Watch On Its Claim For Declaratory Relief.

Randle next contends that the superior court erred by granting summary judgment on Bay Watch's request for declaratory relief. The court interpreted the

---

[9] *See State v. Norene*, 457 P.2d 926, 934 n.5 (Alaska 1969) ("The applicant has the burden of showing his right to injunctive relief by evidence and that irreparable injury will result if the injunction is not granted . . . .").

[10] *Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) (" '[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.' This is true for pro se litigants as well as represented litigants." (quoting *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015))).

association's declaration as allowing it "the right, with reasonable notice, to gain access to the crawl space through [Randle's unit] for reasonable inspection and repairs to the Building." This was not error.

Under the heading "Rights of Entry," the declaration states:

> The Association shall have a limited right of entry in and upon all limited common areas and the exterior of all units for the purpose of taking whatever corrective action may be deemed necessary and proper by the Association. Nothing in this Article shall in any manner limit the right of the unit owner to exclusive control over the interior of his unit. Provided, however, that the owner shall grant a right of entry to the Association, or any other person authorized by the Association, in case of any emergency originating in or threatening his unit, whether the owner is present or not. Provided further, that an owner shall permit other owners, or their representatives, to enter his unit for the purpose of performing required installation, alterations or repair of the mechanical or electrical services to a residence, provided that requests for entry are made in advance and that such entry is at a time convenient to the owner whose unit is to be entered. In case of an emergency, such right of entry shall be immediate.

Randle first argues that the stated rights of entry are limited to "all limited common areas"; that the crawl space is a "common area" rather than a "limited common area"; and that therefore the declaration gives Bay Watch no authority to enter the crawl space. The relevant terms are defined in the declaration. "Limited common areas" are those areas "for which exclusive easements are reserved for the benefit of unit owners," such as "decks, assigned parking spaces[,] and storage areas." "Common areas" include "all areas on the property[] except the units, and [also] include, for maintenance purposes of the Association, all gas, water and waste pipes, all sewers, all ducts, chutes, conduits, wires and other utility installation of the multifamily structure wherever located." As

reasonably interpreted, and consistent with the definitions used in Alaska's condominium statutes, limited common areas are those which belong to the association but of which certain unit owners may have rights of exclusive use,[11] whereas common areas are those which belong to the association and are equally accessible to everyone.[12] These terms are indeed different.

But the clear flaw in Randle's argument is his assumption that the "Rights of Entry" provision applies only to limited common areas. This assumption would mean, absurdly, that Bay Watch reserved no rights to enter common areas — areas accessible to everyone — for purposes of maintenance and repair, even in emergencies. The "Rights of Entry" provision separately addresses two types of entry: entry into limited common areas and — at issue here — entry into a unit. The provision does not need to address entry into common areas, because common areas are accessible to the association anyway; if, for example, the crawl space underneath Randle's unit was accessible from outside the building, the "Rights of Entry" provision would not be implicated at all. The only reason it *is* implicated is because access to the crawl space is through Randle's unit, and the provision addresses the circumstances under which that access may be obtained.

Thus, the first sentence of the "Rights of Entry" provision — addressing "limited common areas and the exterior of all units" — is irrelevant here, because, as Randle himself argues, there is no "limited common area" at issue. The next sentence,

---

[11]     *See* AS 34.07.450(11) (defining "limited common areas and facilities" to include "those common areas and facilities designated in the recorded declaration[] as reserved for use of certain apartment or apartments to the exclusion of the other apartments").

[12]     *See* AS 34.07.450(6) (defining "common areas and facilities" to mean, among specified others, "the installations of central services such as power, light, gas, hot and cold water" and "all other parts of the property necessary or convenient to its existence, maintenance, and safety, or normally in common use").

on which Randle primarily relies, addresses not common areas or limited common areas but rather unit interiors, emphasizing "the right of the unit owner to exclusive control over the interior of his unit." But this "right of the unit owner" is expressly limited by the two separate provisos that immediately follow. The first is: "*Provided, however*, that an owner shall grant a right of entry to the Association . . . in case of any emergency originating in or threatening his unit." (Emphasis added.) The second proviso is: "*Provided further*, that an owner shall permit other owners, or their representatives, to enter his unit for the purpose of performing required installation, alterations, or repair of the mechanical or electrical services to a residence, provided that requests for entry are made in advance and that such entry is at a time convenient to the owner whose unit is to be entered"; although "[i]n case of an emergency, such right of entry shall be immediate." (Emphasis added.)

Both of these express limitations on the unit owner's right "to exclusive control" may be implicated in this case. First, Bay Watch could enter Randle's unit in case of an emergency "originating in or threatening" his unit. And second, even if there was no emergency, Bay Watch could still enter Randle's unit to install, alter, or repair "the mechanical or electrical services," as long as it gave advance notice and set a convenient time; if there was an emergency, Bay Watch could enter immediately. We conclude that the superior court's grant of declaratory relief — that Bay Watch has "the right of entry to access the common areas through Mr. Randle's unit when the association deems it proper and necessary" — is consistent with the only reasonable interpretation of the "Rights of Entry" provision and therefore correct as a matter of law.

Randle argues that the superior court's interpretation fails to account for abuse of the right of entry; he contends that Bay Watch's entry in this case was based on "undisputed false allegations" that he had made negligent repairs in the crawl space. But the court explained at the hearing that potential abuse of the right was a separate issue;

the declaratory relief under consideration concerned only the right's existence. And although Randle devotes pages of his brief to attacking the credibility of Bay Watch's witnesses, witness credibility was irrelevant to the interpretation of the declaration, which presented a pure question of law decided correctly by the superior court.[13]

## C. Randle's Remaining Objections To The Declaratory Judgment Are Without Merit.

Randle challenges the declaratory judgment on other grounds, none of which have merit. He contends that when Bay Watch dismissed the second count of its complaint — alleging that he had made negligent repairs — it necessarily dismissed the first count — the declaratory judgment claim — as well, because the negligence count "adopt[ed] and reallege[d]" all preceding allegations. The argument is frivolous. The practice of incorporating preceding allegations by reference is meant to avoid needless repetition, not to create an interlocking puzzle that falls apart with the loss of one piece.[14] Bay Watch's dismissal of its second count left undisturbed all preceding paragraphs of its complaint, which clearly stated a claim for declaratory relief.[15] The superior court

---

[13] *See Fannon v. Polo*, 436 P.3d 956, 960 (Alaska 2019) ("The interpretation of a covenant is a question of law to which we apply our independent judgment." (quoting *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012))).

[14] *See* 5A ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1326 (4th ed. 2020) ("When the pleader asserts several claims for relief or defenses that rest on a common factual pattern, incorporation by reference eliminates any unnecessary repetition of the transactions and events upon which the pleader relies.").

[15] *See Kajima Eng'g & Constr., Inc. v. City of Los Angeles*, 116 Cal. Rptr. 2d 187, 195 (Cal. App. 2002) (observing that "[c]omplaints generally incorporate prior allegations into subsequent causes of action" and rejecting argument that entire complaint should have been stricken once court struck claims that had been incorporated
(continued...)

properly rejected Randle's argument that Bay Watch had inadvertently dismissed its entire action when it dismissed its negligence claim.

Randle also appears to argue that the superior court impermissibly expanded the issues in the case by granting prospective declaratory relief when, Randle argues, Bay Watch did not ask for it. As Randle interprets the complaint, the first count requested only immediate access to assess the damages caused by the negligence alleged in the second count; once the second count was dismissed, the reason for the first count's request evaporated, and the superior court erred by issuing a declaratory judgment about Bay Watch's prospective right of entry. But the complaint clearly described a dispute over access that was not confined to a single incident, and it expressly requested "a judgment declaring its rights as against Randle," including "the right with reasonable notice to gain access to the crawl space through [Randle's unit] for reasonable inspection and repairs to the Building." The superior court could reasonably conclude that a declaratory judgment on Bay Watch's right of entry would serve the traditional purposes of declaratory relief: "to clarify and settle legal relations, and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' "[16] The court did not impermissibly expand the scope of the relief requested.

Randle also argues that the superior court failed to consider his own motion for declaratory relief, which he filed ten days before the declaratory judgment hearing. His motion alleged that Bay Watch was levying excessive fines against him, interfering with his attempts to secure a mortgage, and delaying his request for "an independent audit of the Association books and records in accordance with the Association's

---

[15]   (...continued)
into others).

[16]   *Lowell v. Hayes*, 117 P.3d 745, 755 (Alaska 2005) (quoting *Jefferson v. Asplund*, 458 P.2d 995, 998 (Alaska 1969)).

Bylaws." At the declaratory judgment hearing, when Randle asked whether the judge had read his motion, the judge responded that he was "not going to get into the middle of all the disputes you have with the association." The judge continued: "That's not part of this lawsuit, right? You're not asking me to decide was the $50 a day fine proper or not proper, you're not asking me to do any of that." Randle replied, "No, no," and he argued only that Bay Watch's actions had to be taken into account because they handicapped his financial ability to defend himself. He did not seek to amend his answer to assert a counterclaim based on any of these additional allegations.

The only claim remaining in the case at the time was Bay Watch's request for a declaratory judgment, which, as noted above, presented only a question of law. Although the superior court could have treated Randle's motion as an attempt to amend his answer, it was not an abuse of discretion not to do so given Randle's disavowal of any such intent.[17]

### D. The Superior Court Did Not Abuse Its Discretion By Denying Randle The Aid Of His Assistant During The Preliminary Injunction Hearing.

At the preliminary injunction hearing, a man whom the clerk identified as Everett Winslow informed the court that he would be "assisting" Randle because Randle "needs help in hearing and other things." The court informed Winslow that unless he could show he was Randle's attorney, he was required to "sit behind the bar," which Winslow reluctantly did. Randle argues that this was an error because he is disabled — he suffers from poor eyesight and deficiencies in hearing and

---

[17]     *See Ardinger v. Hummell*, 982 P.2d 727, 737 (Alaska 1999) ("The superior court has broad discretion to allow amendment of pleadings."). Randle also contends that the declaratory judgment violated his state and federal constitutional rights, but he provides no substantive analysis, and we consider the argument waived. *See Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017).

mobility — and that he has rights to assistance under the Americans with Disabilities Act and the state and federal constitutions.[18]

Whether to allow a non-lawyer to assist a litigant in the courtroom is committed to the superior court's discretion.[19] We will not find an abuse of discretion in the court's decision to place limits on lay representation absent a showing of prejudice.[20] Here, the court provided Randle with hearing equipment at the start of the proceeding, asked for Randle's assurance that he could hear, and advised a witness to "speak right into the microphone, because that's what transmits to [Randle's] hearing aid." Randle participated fully in the hearing and does not identify any part that he missed or failed to understand because of a claimed disability. In the absence of any showing of prejudice, we find no abuse of discretion.[21]

### E. The Superior Court Did Not Abuse Its Discretion By Awarding Attorney's Fees To Bay Watch.

The superior court determined that Bay Watch was entitled to Alaska Civil Rule 82 attorney's fees as the prevailing party. Attorney's fees calculated under Rule 82(b)(2) — for a case "resolved without trial" in which "the prevailing party recovers no money judgment" — totaled approximately $10,000, 20% of the "reasonable actual attorney's fees which were necessarily incurred." But because Bay Watch

---

[18] The judge at the later declaratory judgment hearing allowed Winslow to participate fully as Randle's assistant and mouthpiece.

[19] *Arnett v. Baskous*, 856 P.2d 790, 792 (Alaska 1993).

[20] *Ferguson v. Dep't of Corr.*, 816 P.2d 134, 140 n.15 (Alaska 1991); *see also Skuse v. State*, 714 P.2d 368, 371 (Alaska App. 1986) (holding that "absent a showing of prejudice, we will not consider limitations on lay representation an abuse of discretion").

[21] *Ferguson*, 816 P.2d at 140 n.15.

withdrew its negligence claim after inspecting the crawl space, the court reduced the award to $5,000 by reference to Rule 82(b)(3)(F), which allows the court to modify a scheduled award based on "the reasonableness of the claims and defenses pursued by each side." The court considered Bay Watch's actual fees high given that "this was a relatively straightforward declaratory relief action that should have been resolved quickly," but it found $5,000 to be an appropriate award because Randle's unwillingness to "allow[] access early on" generated "unnecessary fees."

Randle challenges the attorney's fees award on several grounds. His first argument, though difficult to understand, appears to relate to the award's timing. Rule 82(c) requires motions for attorney's fees to be "filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment as defined by Civil Rule 58.1." The clerk's certificate shows that the final judgment was distributed on September 10 and 11, and Bay Watch filed its attorney's fees motion on September 16, well within the time allowed. The court issued its order on attorney's fees on October 28 and amended the final judgment the same day to include the ordered amounts. We see no issues with the timing or procedure.

Randle also contends that the court failed to consider other Rule 82(b)(3) factors that may have justified a greater downward departure from the scheduled award. He cites (E) ("the attorneys' efforts to minimize fees"), (G) ("vexatious or bad faith conduct"), (H) ("the relationship between the amount of work performed and the significance of the matters at stake"), (I) ("the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts"), (J) ("the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer"), and (K) ("other equitable factors deemed relevant"). We note that

Randle raised none of these factors in his opposition to Bay Watch's attorney's fees motion. Moreover, "[a]pplication of Rule 82(b)(3) factors is discretionary, not mandatory."[22] The superior court expressly considered the nature of the parties' claims and defenses, their relative success, and Randle's unnecessary resistance to Bay Watch's right of access, and reflecting these considerations it made an award of attorney's fees that was less than half of what would have been presumptively correct.[23] We see no abuse of discretion in its failure to consider other Rule 82(b)(3) factors.

Randle's remaining objections to the attorney's fees award appear to largely reiterate his arguments about the merits of the court's decision on summary judgment, which we address above. Because the court did not abuse its discretion either in its prevailing party determination or its calculation of an appropriate amount of fees, we affirm its attorney's fees award.[24]

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[22] *Greene v. Tinker*, 332 P.3d 21, 41 (Alaska 2014) (quoting *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008)).

[23] *See id.* ("[A]wards of attorney's fees made pursuant to the schedule set out in Rule 82 are presumptively correct, and the superior court need not make any findings in support of the award.").

[24] *See Alaskasland.Com, LLC v. Cross*, 357 P.3d 805, 825 (Alaska 2015) (noting that "both the determination of prevailing party status and the award of costs and fees are committed to the broad discretion of the trial court" (quoting *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241 (Alaska 2013))).