NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| BILLY E. WOMACK, | ) | |
| | ) | Supreme Court Nos. S-17932/17991 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 3PA-14-02780 CI |
| | ) | |
| GINA M. JONES, DARRYL L. JONES, | ) | MEMORANDUM OPINION |
| and TARRI HARROLD-JONES, | ) | AND JUDGMENT* |
| | ) | |
| Appellees. | ) | No. 1894 – May 18, 2022 |
| | ) | |

Appeals from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Billy E. Womack, pro se, Anchorage, Appellant. Notices of nonparticipation filed by Darryl L. Jones, Jones & Associates, LLC, Palmer, for Appellees Tarri Harrold-Jones and Darryl L. Jones, and by Appellee Gina M. Jones, pro se, Palmer.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices. [Henderson, Justice, not participating.]

## I. INTRODUCTION

A divorcing couple with one child reached a settlement agreement which was incorporated into the superior court's divorce decree. Under the agreement the father was responsible for selling the marital home, after which he and the mother would split the proceeds "50/50." The couple agreed that the father would make any repairs

---

\*      Entered under Alaska Appellate Rule 214.

required to sell the home and would be reimbursed "off the top" of the sale proceeds before the parties split the remainder.

The father purchased materials and spent a significant amount of time remodeling the home for sale. The superior court interpreted the settlement agreement as allowing the father to recover the costs of the materials but not the value of his time or a per diem. The father appeals this decision. He also argues that the court erred by allowing the mother's parents — who intervened to protect their interests in visitation with the parties' child — to participate in aspects of the case dealing with marital property. We conclude that the superior court properly interpreted the parties' settlement agreement and that the grandparents' involvement, if improper, was harmless error.

In a separate appeal, the father challenges a non-final order denying his motion to dismiss a motion to modify custody; he argues that he never received proper service of the motion to modify. We affirm the superior court's ruling on this issue as well.

## II.    FACTS AND PROCEEDINGS

Gina Jones and Billy Womack were married in 2006 and have one child. Gina filed for separation in 2014, and a month later Billy counterclaimed for divorce.

In May 2016 Gina's parents, Darryl Jones and Tarri Harrold-Jones, moved to intervene in the divorce proceedings, claiming standing based on their status as the grandparents of Billy and Gina's child and a desire to protect their visitation rights. Billy opposed intervention; Gina did not. The court granted the motion to intervene.

### A.    Proceedings Concerning The Marital Home

In October 2018 the parties participated in a settlement hearing at which Billy and Gina agreed that the marital home would be sold. They agreed that "[o]nce the house sells, after any costs are deducted, the parties will split any remainder 50/50." They also agreed that if repairs were necessary before the house could be sold, Billy

would pay for them and would be compensated "on the backside of the return," "off the top of the proceeds" from the sale.

The court incorporated the parties' settlement agreement into its findings of fact and conclusions of law: "The marital residence will be marketed and sold as set forth on the record 10/25/18. The net proceeds after cost of sale shall be divided 50/50. [Billy] will retain possession until sale, and shall be responsible for safeguarding the residence pending the sale."

When Billy had not sold the home by July 2019,[1] Gina moved for the authority to sell it herself. The court addressed the issue in an October hearing, at which it concluded that Billy was still responsible for the sale but that Gina could renew her motion if the home was not sold by April 1, 2020. The court also amended the divorce decree to incorporate these modifications to the parties' responsibilities.

In September 2020 Gina moved to enforce the property settlement as reflected in the court's findings and conclusions. She asserted that Billy had sold the marital home, and she asked that he be ordered to pay her 50% of the sale proceeds. Billy responded that there was "a deficit to the net proceeds and it would appear [Gina] is owing for half of the deficit to [Billy]." He asserted that after the costs of sale he received $160,000 for the home, and he attached a number of documents which he claimed showed repair costs exceeding that amount; these totaled $163,271.68, including $99,050 for labor costs. Gina questioned Billy's expenses, asserted that the actual sale price was $184,000, and calculated her share of the proceeds as $74,901.11.

The superior court ordered Billy to pay Gina $79,302.22 — 50% of the net

---

[1] Billy testified that only one potential buyer had made an offer, and it was too low to accept. He testified that the realtor told him he would have to do work on the property in order to get his desired sales price — which at the time was $120,000. Billy then began the substantial renovations.

proceeds from the sale after subtracting brokerage and accounting fees. The court ruled that Gina was entitled to this amount based on the wording of the 2018 findings of fact and conclusions of law, which stated that "[t]he net proceeds after cost of sale shall be divided 50/50."

Billy moved for reconsideration, arguing that the order did not reflect the parties' later agreement that he was entitled to offset the costs of remediation and repair. Gina opposed the motion but said she would accept $55,000 as her share "in light of the fact that [Billy] put forth some effort into improving the value of the home and for the purpose of a quick resolution to this matter."

Recognizing the parties' agreement that Billy "would be reimbursed for the costs he put in to remodel the home," the court issued a new ruling on the issue. It accepted Billy's accounting of the costs of repair as true and subtracted them from the sale proceeds. But the court declined to subtract Billy's claimed labor costs, explaining that "the parties never discussed whether [Billy] would be reimbursed for his labor costs." The court reasoned further that Billy's claimed "labor expenses or food per diem" were offset by the fact that he "did not pay rent or a mortgage throughout the time that he was remodeling the house." Subtracting only brokerage fees, taxes, and renovation costs from the sale price, the court divided the result by 50% to reach $61,394.40 as Gina's share of the proceeds. But because she had agreed to resolve the matter for $55,000, the court awarded her that amount.

Billy appeals that order.

B.    **Proceedings Concerning Custody**

Gina filed a motion to modify custody in October 2020, but the court rejected the motion because of her failure to pay a filing fee and to include certain supporting documents. Shortly thereafter Gina perfected service by filing everything required.

Billy moved to dismiss the custody motion on the ground of improper service, asserting that the documents he received were missing the motion and the first six pages of the supporting memorandum. The court denied Billy's motion to dismiss, concluding that Gina had in fact "perfected service" and that Billy "clearly received something, because he filed a motion in response"; in any event, the court said it would provide Billy with a copy of Gina's filings.

Billy responded with a motion to reconsider, claiming that he had still not received the missing documents. The court denied his motion. Billy appeals the denial of his motion to dismiss the custody motion.[2]

## III. STANDARDS OF REVIEW

"We apply basic contract interpretation principles to interpret a property division agreement incorporated into a divorce decree."[3] Because the interpretation of contract language is a question of law, we "interpret the language de novo."[4] We review for abuse of discretion the superior court's exercise of control over proceedings.[5]

---

[2]    This second appeal was procedurally improper, as denial of the motion to dismiss was not a final appealable order. *See* Alaska R. App. P. 202(a). Given the lack of opposition we treat it as if it were a granted petition for review.

[3]    *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011).

[4]    *Id.*

[5]    *See Randle v. Bay Watch Condo. Ass'n*, 488 P.3d 970, 978 (Alaska 2021) (reviewing for abuse of discretion superior court's limits on non-lawyer assistance in courtroom); *Luker v. Sykes*, 357 P.3d 1191, 1195, 1200 (Alaska 2015) (rejecting litigant's argument that superior court improperly limited his trial time because litigant failed to establish prejudice).

## IV.    DISCUSSION

### A.    The Superior Court Properly Interpreted The Parties' Settlement Agreement.

When we interpret a settlement agreement, "[i]nsofar as an agreement relates to the division of property, 'the separation agreement should be controlling in the absence of fraud, duress, concealment of assets or other facts showing that the agreement was not made voluntarily and with full understanding.' "[6]  "If the contract language is not ambiguous, 'we decide the meaning of the contract as a matter of law.' "[7]  "An ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms."[8]

Billy argues that the starting point for distributing the proceeds from the marital home is the value of the property before any renovations.  He argues, "It was widely discussed with [the judge] on both days of settlement . . . that the amount to be given to Gina would have been half of what it sold for *AS-IS*."  (Emphasis in original.) Under Billy's interpretation, he should also recover the price of the materials used in the repair and the value of his labor; only after he is fully reimbursed can there be an equal distribution of any remaining proceeds.

Billy's interpretation is contrary to the settlement agreement's plain meaning.  The agreement's language  — "The net proceeds after cost of sale shall be

---

[6]    *Notkin v. Notkin*, 921 P.2d 1109, 1111 (Alaska 1996) (quoting *Kerslake v. Kerslake*, 609 P.2d 559, 560 n.1 (Alaska 1980)).

[7]    *Thomson v. Thomson*, 394 P.3d 604, 607 (Alaska 2017) (quoting *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008)).

[8]    *Id.* at 607-08 (quoting *Villars v. Villars*, 277 P.3d 763, 768-69 (Alaska 2012)).

divided 50/50" — is unambiguous; the starting point of any calculation is to be the "cost of sale." Though it appears that at the time of the settlement hearing the parties thought the home would go on the market quickly — they stipulated that they would "pick [a real estate agent] within the next ten days" — the parties did not agree to split the "as-is" value of the home (as it was at that time) regardless of the final sale price, as Billy contends.

Nor did the superior court err by concluding that Billy was not entitled to be paid for his own labor out of the sale proceeds. The court ruled against Billy on this issue because it believed that "the parties never discussed whether [Billy] would be reimbursed for his labor costs." But the parties did in fact address the issue, expressly confirming the court's understanding that Billy would not be "doing reimbursable labor":

> COURT: Right, . . . we wouldn't not[9] anticipate [Billy] doing . . . reimbursable labor. He can do labor, but if there's going to be labor that's reimbursed for, you can pay a third party to do it; write a check. [Gina] gets to be involved in that. Both parties have to agree to any repairs and the costs but then whoever pays for them gets reimbursed off the top of the proceeds. Is that the parties' understanding?
>
> GINA'S ATTORNEY: Yes.
>
> BILLY: Yes.

In short, although the parties discussed Billy's work on the home and understood that he would continue the renovations and be reimbursed for materials and supplies, there was no agreement that he would be reimbursed for his own labor.

We conclude, therefore, that the superior correctly interpreted the parties' settlement agreement. The starting point of the distribution was the sale price; Billy

---

⁹ In the audio recording of this hearing, though the judge uses a double negative, he is clearly stating that Billy would not be reimbursed for personal labor.

could subtract from that his expenditures but not the cost of his own labor. The superior court's order, granting Gina $55,000 from the sale proceeds, uses Billy's own numbers for the costs of renovation and sale and requires Billy to pay Gina less than he would under the terms of the settlement agreement as literally interpreted.[10] We therefore affirm the court's distribution of the proceeds.[11]

B. **Any Abuse Of Discretion In Allowing The Grandparents' Participation In The Proceedings Involving The Marital Home Was Necessarily Harmless.**

Billy argues that the superior court abused its discretion by allowing Gina's parents, Darryl Jones and Tarri Harrold-Jones, to intervene in the divorce case. Their motion to intervene relied on their status as the child's grandparents, explaining that "they have taken extensive care of [the child] in the past, present and will be [doing so] in the future, and have a vested interest in these proceedings." The court granted their motion.

Billy argues that he "did not get a fair hearing" because the court allowed Jones, an attorney, to "speak[] on behalf of Gina most of the time and giv[e] his opinions

---

[10] We calculate that number as $60,396.70, starting with the final sale price of the home — $184,000 — subtracting Billy's claimed expenses for "General Receipts," "Lowes 2019," "Home Depot 2019," "Kitchen and Master Bedroom 2016," "Land Taxes 2013-2020," "Real Estate Brokerage Fees and other selling costs," and "Accounting Fees," and then dividing by two.

[11] Billy also makes several arguments related to the formation of the settlement agreement. He argues that he "had no choice but to accept doing a settlement" because the judge's calendar would not allow "a solid trial date." But every litigant faces the same dilemma: to settle or wait for trial. Billy made his choice. He also argues that the court should not have incorporated the property settlement into the divorce decree because no one explained to him "the repercussions of a Settlement." But the court did explain the ramifications of settlement on the record, and Billy said he understood. His arguments about contract formation do not affect the validity of the settlement agreement.

on what should be happening." Because the only substantive issues on appeal involve the sale of the marital home, we consider only how the intervention affected the relevant proceedings. Jones did participate in the October 2019 hearing, first in his role as intervenor addressing issues of custody and visitation but then in a more ambiguous role. Along with the other parties, Jones was sworn in as a witness early in the hearing. When the court turned to discussion of selling the marital home, Jones first spoke when Billy asked him to verify that he had done work on the Joneses' house that led to its sale. But Jones's further contributions to the discussion were not factual; they reflected his own opinions of the sale issues the parties were trying to resolve. Billy objected to Jones's participation, noting that Jones had no interest in the house, to which Jones responded that he had an interest because Gina was living with him and his wife.

We do not need to decide whether it was an abuse of discretion to allow Jones to participate in the discussion of the marital home, because Billy fails to show how it prejudiced him.[12] Jones's first contribution was to praise Billy's construction skills: "[H]e's talented when he chooses to apply himself. He actually has a high skill level." Jones then supported Billy's position by conceding that Gina "shouldn't be asking for rent because [Billy is] taking money out of his pocket to improve [the home]." When Jones later suggested a method of dividing the sale proceeds, the court appeared to be uninfluenced by it, stating, "I'm not going to get into . . . who gets what and how much money is going to be fair." And although Jones suggested a timeline for the sale of the house — that Billy could "probably sell it within three month[s]" after it went on the market — there is no indication that this influenced the court's decision either; the court responded, "That's what I was going to say."

---

[12] *See Luker v. Sykes*, 357 P.3d 1191, 1200 (Alaska 2015) (observing that party complaining of court's allocation of trial time must show prejudice); Alaska R. Civ. P. 61 (instructing that harmless errors must be disregarded).

The party asserting prejudice has the burden of showing it.[13] Billy has not shown any prejudice caused by the grandparents' involvement as it relates to the sale of the marital home; he does not explain how the court's ruling would have been different had Jones not spoken during the relevant proceedings. If it was an abuse of discretion to allow Jones to participate in that discussion, the error was necessarily harmless.

## C. The Superior Court Did Not Err In Its Rulings Related To Gina's 2020 Custody Motion.

Billy's second appeal addresses Gina's October 2020 motion to modify custody; neither of his contentions has any merit.[14] He first argues that service of Gina's motion was inadequate because some pages were missing, and the superior court erred by refusing to dismiss it on that ground. In denying Billy's motion to dismiss, the superior court explained that Billy "clearly received something, because he filed a motion in response. Additionally, a copy of [Gina's] Motion and memorandum in support will be distributed with this Order." Even if the court failed to distribute the promised copies with its order, as Billy also alleges, the record shows that Gina later perfected service by filing everything required of her. If there was a deficiency in the original service, it was remedied before Billy was required to substantively respond; his motion to dismiss had no merit, and the court properly rejected it.

Second, Billy contends that the court erred by referring Gina's custody motion to a master for an evidentiary hearing; he contends there was no showing of a substantial change in circumstances as required for a modification of custody.[15]

---

[13]    *Dobos v. Ingersoll*, 9 P.3d 1020, 1024 (Alaska 2000).

[14]    We address these issues briefly even though we recognize that they have likely been mooted by further activity in the superior court.

[15]    *See* AS 25.20.110(a) ("An award of custody of a child or visitation with the
(continued...)

"Whether a moving party has made a prima facie showing of changed circumstances warranting a hearing is a question of law that we review de novo."[16] Gina's motion asserted that Billy had moved away from Alaska with the parties' child; this alleged a substantial change in circumstances as a matter of law.[17] The superior court did not err by ordering a custody hearing.[18]

[15]    (...continued)
child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); *King v. Carey*, 143 P.3d 972, 973-74 (Alaska 2006) ("The change in circumstances 'must be significant or substantial.' " (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000))).

[16]    *Yvonne S. v. Wesley H.*, 245 P.3d 430, 432 (Alaska 2011).

[17]    *See Bagby v. Bagby*, 250 P.3d 1127, 1129 (Alaska 2011) ("We have held that 'a custodial parent's decision to move out-of-state [with the children] amounts to a [substantial] change in circumstances as a matter of law." (alterations in original) (quoting *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001))).

[18]    Billy also challenges the superior court's impartiality, calling the judge "curt, harsh, extremely cruel, and degrading [to] Billy" throughout the proceedings. A party claiming a disqualifying judicial bias must prove "that the court formed an unfavorable opinion of the party from extrajudicial information," *Downs v. Downs*, 440 P.3d 294, 299 (Alaska 2019), or that the court heard, learned, or did "something intrajudicially so prejudicial that further participation would be unfair." *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)). Our review of the record discloses no evidence to support Billy's characterization of the judge's treatment of him or to otherwise support a claim of a disqualifying bias.

## V.    CONCLUSION

The superior court's order regarding the proceeds of the sale of the marital home, its order denying Billy's motion to dismiss, and its referral of Gina's custody motion to a master for an evidentiary hearing are AFFIRMED.